■ SAKINEH BAZARGAN ATAI et al., Appellants, v DOGWOOD REALTY OF N.Y., INC., et al., Respondents. [807 NYS2d 615]—

In an action, inter alia, for specific performance of an agreement for the sale of real property, the plaintiffs appeal from an order of the Supreme Court, Queens County (Kitzes, J.), dated March 16, 2004, which granted the defendants' motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the motion is denied, and the complaint is reinstated.

At issue on this appeal is the enforceability of an alleged agreement for the sale of real property entered into by a member of a small family partnership, and the president of a close corporation. The plaintiff Sakineh Bazargan Atai and her two sons are the sole members of the plaintiff partnership, Farid Investment. The defendant Howard Y. Jang is the president of the defendant corporation, Dogwood Realty of N.Y., Inc. (hereinafter Dogwood), and the owner of 50% of the corporation's shares. Mr. Jang's wife, Young H. Jang, owns 50% of the shares of Dogwood. Dogwood's certificate of incorporation states that its corporate purpose is, inter alia, to purchase and sell real property.

In the summer of 2002, real estate broker Perry Lee allegedly contacted Mr. Jang and told him that he had a potential purchaser who would be willing to pay a good price for the premises which are the subject of this litigation, 83-19 and 83-21 Broadway, in Elmhurst, Queens. According to the broker, Mr.

Jang thought the matter over, and then advised him that he would be willing to entertain an offer for the property. With the assistance of the broker, Mr. Jang and Mrs. Atai ultimately negotiated a deal which called for Mr. Jang to sell the premises for the sum of $1.8 million. Although the subject premises are actually owned by the corporate defendant Dogwood, Mrs. Atai claims that she was unaware of this fact when the sales price and other terms of the transaction were negotiated.

At Mr. Jang's request, the broker prepared a written memorandum dated August 7, 2002, reflecting the terms of the agreement which set forth the address of the subject premises, and also stated: (1) the purchase price was to be $1,800,000, (2) the sale was to be "[a]ll [c]ash," (3) closing was to take place in 30 to 60 days, and (4) the broker was to receive a $50,000 commission, to be paid by the seller. The memorandum also identified the purchaser as Mrs. Farideh Atai. Mrs. Atai explained that "Farideh" is a diminutive of "Sakineh," and that she is known by both names. Although the broker stated that he did not initially address the memorandum to Mrs. Jang, he subsequently added her name because Mr. Jang instructed him to do so. However, the memorandum contained signature lines only for "Howard Jang (Seller)," and "Farideh Atai (Buyer)." The memorandum additionally listed the names and addresses of the attorneys representing the purchaser and seller, and concluded by asking the parties to "[p]lease review the terms and sign below in order to proceed with a contract of sale." When the memorandum, which had already been signed by Mr. Jang, was presented to Mrs. Atai for her signature, she handwrote "Farid Investment Limited Part." next to the portion of the document that identified her as the purchaser. Mrs. Atai claims that the broker was on the telephone with Mr. Jang when she called the broker's attention to the fact that Farid Investment should have been named as the purchaser, and that Mr. Jang apparently voiced no objection when the broker told her to simply change the name. Mr. Jang signed the memorandum first, and Mrs. Atai signed the memorandum later on the same day.

Shortly after the memorandum had been signed, Mr. Jang refused to proceed with the transaction, allegedly because he had received a better offer for the premises. Mrs. Atai and Farid Investment then commenced this action against Mr. Jang and Dogwood, inter alia, for specific performance of an alleged agreement for the sale of the subject premises or, in the alternative, damages for breach of contract.

After depositions of the parties had been conducted, the defendants moved for summary judgment dismissing the

complaint, contending that the memorandum signed by Mr. Jang and Mrs. Atai was insufficient to satisfy the statute of frauds and to constitute a binding contract for the sale of the premises. In support of the motion, Mr. Jang submitted an affidavit in which he noted that the memorandum did not refer to Dogwood, the actual owner of the premises, and then claimed that there had been no corporate resolution authorizing the sale, and that his wife had been adamantly opposed to the transaction. Mr. Jang additionally argued that the memorandum was unenforceable because the parties had not agreed upon all of the material terms of the sale. In an affidavit in opposition to the motion, Mrs. Atai averred that Mr. Jang had represented himself to be the seller of the premises, and had never advised her that Dogwood owned the premises and that his wife was a shareholder of the corporation. She also maintained that the memorandum contained all of the terms essential to a real estate contract. The Supreme Court granted the defendants' motion, concluding, as a matter of law, that the memorandum did not satisfy the statute of frauds. We reverse.

The statute of frauds (General Obligations Law § 5-703 [3]) provides that "[a] contract to devise real property . . . is void unless the contract or some note or memorandum thereof is in writing and subscribed by the party to be charged therewith, or by his [or her] lawfully authorized agent." Generally, a writing may satisfy the statute of frauds and be enforced as a contract where it identifies the parties, describes the subject matter, states all of the essential terms of an agreement, and is signed by the party to be charged (*see Sabetfard v Djavaheri Realty Corp.*, 18 AD3d 640 [2005]; *Rahimzadeh v M.A.C. Assoc.*, 304 AD2d 636 [2003]; *160 Chambers St. Realty Corp. v Register of City of N.Y.*, 226 AD2d 606 [1996]).

Although our dissenting colleague would find, as a matter of law, that the subject memorandum is not an enforceable contract because it failed, among other things, to satisfy the basic criteria of identifying the parties to the transaction, we disagree. The memorandum identifies the purchaser as "Farideh Atai," and is signed by "S. Bazargan Atai." It is undisputed that the plaintiff Sakineh Bazargan Atai, who seeks enforcement of the memorandum she signed, is also known by the diminutive of her first name, Farideh. Moreover, while the record reveals that Mrs. Atai handwrote the name of her partnership Farid Investment on the memorandum after Mr. Jang had already signed it, it is undisputed that she was authorized to act on behalf of this family partnership, and the record is devoid of even a bare allegation that Mr. Jang objected to Mrs. Atai's

desire that title be conveyed to Farid Investment rather than to herself.

Furthermore, the fact that the memorandum identifies the seller as Howard Jang rather than Dogwood is not necessarily an absolute bar to enforcement. Although Mr. Jang did not indicate that he was signing the memorandum in his representative capacity, he was nevertheless committing himself to the sale of property owned by a close corporation of which he was president and a 50% shareholder. These circumstances raise a triable issue of fact as to whether Mr. Jang was in fact acting on behalf of Dogwood. As an undisclosed principal, Dogwood may be bound to an agreement signed by Mr. Jang if he was acting within his authority as an officer and shareholder of the corporation (*see* Restatement [Second] of Agency § 186; *J.P. Endeavors v Dushaj*, 8 AD3d 440 [2004]). Although Mr. Jang asserts that his wife, Dogwood's only other shareholder, did not consent to the sale, he came forward with no evidence to establish that he lacked authority to consent to the sale of corporate property absent her consent or a corporate resolution. Indeed, since one of Dogwood's declared corporate purposes is to purchase and sell real property, it can be presumed that Mr. Jang, as its president, was authorized to bind it to this proposed sale in the ordinary course of corporate business (*see Odell v 704 Broadway Condominium*, 284 AD2d 52 [2001]; *A & M Wallboard v Marina Towers Assoc.*, 169 AD2d 751 [1991]). Moreover, Mrs. Atai's allegation that Mr. Jang held himself out as having authority to sell the subject premises raises a triable issue of fact as to whether Dogwood, as an undisclosed principal, should be estopped from denying Mr. Jang's authority to enter into the subject memorandum (*see Bhutta Realty Corp. v Sangetti*, 165 AD2d 852 [1990]; *Kursh v Verderame*, 87 AD2d 803 [1982]).

In addition to setting forth the purchase price, the written memorandum also reflected the fact that the parties had agreed on other essential terms of a real estate transaction. The memorandum specified that the transaction was to be "[a]ll [c]ash," thus eliminating any need to agree on terms concerning financing. The memorandum also stated that closing was to take place within 30 to 60 days. A writing reflecting agreement on key terms such as these can potentially suffice, depending on the factual circumstances of the particular case, to satisfy the statute of frauds and bind the parties (*see Sabetfard v Djavaheri Realty Corp., supra; Rahimzadeh v M.A.C. Assoc., supra; Sehati v Greenberg*, 292 AD2d 587 [2002]; *Century 21 Volpe Realty v Jhong Kim*, 231 AD2d 667 [1996]; *160 Chambers St. Realty Corp. v Register of City of N.Y., supra*).

Although the memorandum itself indicated that the parties anticipated the execution of a more formal contract, this would not impair the effectiveness of the writing if, in fact, it embodied all of the essential terms of the agreement (*see Sabetfard v Djavaheri Realty Corp., supra; 160 Chambers St. Realty Corp. v Register of City of N.Y., supra*). While the memorandum did not set forth all of the terms customarily contained in a more formal real estate contract, whether or not these unspecified terms were indeed considered material by the parties at bar is sharply disputed. The fact that a writing does not resolve collateral terms which are not material to the parties does not necessarily vitiate an agreement (*see Sabetfard v Djavaheri Realty Corp., supra; 160 Chambers St. Realty Corp. v Register of City of N.Y., supra*) particularly where, as here, many of the terms not specified in the writing are addressed in standard form real estate contracts. Accordingly, we conclude that the issue of whether the memorandum signed by the parties at bar satisfies the statute of frauds and constitutes an enforceable agreement for the sale of the subject premises should await resolution at trial. S. Miller, J.P., Krausman and Covello, JJ., concur.

Goldstein, J., dissents and votes to affirm, with the following memorandum: There are two basic issues in this case, to wit, whether the memorandum contains sufficient information to satisfy the statute of frauds, and whether the memorandum was signed by the party to be charged.

The memorandum dated August 7, 2002, is addressed to the defendant Howard Y. Jang and Young H. Jang stating that the subject property was to be sold to Farideh Atai at a price of $1,800,000, "All Cash" with closing "30-60 Days," commission of $50,000 to be paid by the seller. The memorandum stated that it was executed "in order to proceed with a contract of sale." After Howard Jang signed the memorandum Mrs. Atai changed the name of the purchaser to Farid Investment, a limited partnership based in the State of Colorado.

The subject property was in fact owned by the defendant Dogwood Realty of N.Y., Inc. (hereinafter Dogwood). Howard Y. Jang is a shareholder of Dogwood. Young H. Jang, who owns 50% of the shares of Dogwood, is mentioned in the memorandum as an addressee but did not sign the memorandum.

In response to the plaintiffs' action, inter alia, for specific performance and to recover damages sounding in fraud, the defendants pleaded the statute of frauds and moved for summary judgment dismissing the complaint. The plaintiffs, in opposition, claimed that there were triable issues of fact as to whether Howard Y. Jang as an officer of Dogwood had the authority to act on behalf of Dogwood.

The Supreme Court granted summary judgment to the defendants on the ground that the memorandum did not satisfy the statute of frauds. The majority would find that the question of whether the memorandum satisfies the statute of frauds constitutes a triable issue of fact for the jury to resolve.

"[T]he adequacy of a writing for Statute of Frauds purposes . . . must be determined from the documents themselves, as a matter of law" (*Bazak Intl. Corp. v Mast Indus.*, 73 NY2d 113, 118 [1989]; *see Scheck v Francis*, 26 NY2d 466, 472 [1970]). "Consideration of parol evidence in assessing the adequacy of a writing for Statute of Frauds purposes would otherwise undermine the very reason for a Statute of Frauds in the first instance" (*Bazak Intl. Corp. v Mast Indus., supra* at 118). A memorandum evincing a contract for the sale of real property (*see* General Obligations Law § 5-703) must "designate the parties, identify and describe the subject matter and state all of the essential terms of the agreement" (*Bhutta Realty Corp. v Sangetti*, 165 AD2d 852, 853 [1990]). On its face, the memorandum did not set forth essential terms of a contract for the sale of real property (*see DeMartin v Farina*, 205 AD2d 659, 661 [1994]).

The law is well settled that pursuant to the statute of frauds a "memorandum of a contract for a sale of land must identify by name or description the parties to the transaction, a seller and a buyer" (*Irvmor Corp. v Rodewald*, 253 NY 472, 475 [1930]; *see Villano v G & C Homes*, 46 AD2d 907 [1974]). The instant memorandum failed to satisfy these basic criteria. The memorandum did not identify the owner of the property and the name of purchaser was changed after Howard Y. Jang signed it.

In addition, the memorandum made no mention of the quality of title to be conveyed, adjustments for taxes paid by the sellers, or the risk of loss prior to the closing. Further, there was no agreement as to the amount of the contract deposit (*see Gibraltar Estates v U.S. Bank*, 5 AD3d 728, 729 [2004]), which is an essential term of a contract for the sale of real property (*see Parisi v Harman*, 150 AD2d 946, 947 [1989]).

The memorandum stated that the parties contemplated the subsequent execution of a formal "contract of sale." It is evident from the face of the document that the parties did not intend that the memorandum "evidence the entire agreement" (*Behar v Mawardi*, 268 AD2d 400, 401 [2000]).

Although some of these facts standing alone would be insufficient to deem the memorandum unenforceable pursuant to the statute of frauds, the totality of the circumstances mandates

the conclusion that the memorandum failed to satisfy the statute of frauds and is unenforceable (*see O'Brien v West*, 199 AD2d 369, 371 [1993]; *Sheehan v Culotta*, 99 AD2d 544 [1984]).

It should also be noted that the appellants acknowledge in their brief that Howard Y. Jang "signed the contract as the individual seller," and there is no indication on the face of the memorandum that Howard Y. Jang signed in a representative capacity (*see Bridgeview Dev. Corp. v Hooda Realty*, 145 AD2d 457 [1988]). In order to be enforceable, a writing must be "subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing" (General Obligations Law § 5-703 [2]). As a general rule, a corporation cannot be bound to a document unless it is either named within it or its officer has signed in a representative capacity (*see Bridgeview Dev. Corp. v Hooda Realty, supra*).

On the question of whether Howard Y. Jang was authorized to sign the memorandum on behalf of the corporation, extrinsic evidence is admissible (*see Karnal v Horovitz*, 187 Misc 851, 855 [1946], *affd* 272 App Div 796 [1947]). On a motion to dismiss a complaint for failure to state a cause of action, an allegation that the signatory of an agreement as president and sole shareholder of the owner corporation was authorized to sign on the corporation's behalf gives rise to a presumption that the authorization was in writing as required by General Obligations Law § 5-703 (2) (*see Karnal v Horovitz, supra* at 855).

However, the instant case involves a motion for summary judgment, not a motion to dismiss the complaint wherein all allegations in the complaint must be accepted as true (*see Leon v Martinez*, 84 NY2d 83 [1994]). There was no writing authorizing Howard Y. Jang to sell the subject property as agent for Dogwood (*see Urgo v Patel*, 297 AD2d 376, 377 [2002]; *Diocese of Buffalo v McCarthy*, 91 AD2d 213, 218 [1983]). The memorandum itself is addressed to Young H. Jang and thus acknowledges her involvement (*see Kursh v Verderame*, 87 AD2d 803 [1982]). Therefore, it appears from the face of the agreement that it is not signed by the parties to be charged (*see Bhutta Realty Corp. v Sangetti, supra* at 853), nor is there any basis in this record to pierce the corporate veil (*see Raleigh Assoc. v Jackson*, 96 NYS2d 528, 531 [1950], *affd in part sub nom. Raleigh Assoc. v Henry*, 277 App Div 978 [1950]).

The plaintiffs' cause of action sounding in fraud is merely an effort to avoid the consequences of the statute of frauds by recharacterizing the claim as sounding in fraud (*see Gora v Drizin*, 300 AD2d 139 [2002]). Since the memorandum is unenforceable, the plaintiffs cannot recover damages arising from the fact that the sale did not proceed to closing.