JOSHUA NESBITT, Appellant, v JEAN PENALVER, Respondent. [835 NYS2d 426]—

In an action, inter alia, for specific performance of a contract for the sale of real property, the plaintiff appeals from (1) an order of the Supreme Court, Richmond County (Minardo, J.), dated January 28, 2005, which, among other things, denied that branch of his motion which was for leave to enter a judgment upon the defendant's default in answering the complaint, and (2) an order of the same court dated August 30, 2005, which granted the defendant's motion for summary judgment dismissing the complaint.

Ordered that the orders are affirmed, with one bill of costs.

Contrary to the plaintiff's contention, the writings relied upon by him to establish an alleged agreement between the parties were insufficient to satisfy the statute of frauds (*see* General Obligations Law § 5-703 [2]). Specifically, the plaintiff relies upon three letters. First, by letter dated February 6, 2004, the defendant's attorney advised the plaintiff, in relevant part, as follows: "Please be advised that we represent your sister, Jean Penalver, in connection with the property at 106 Elizabeth Street, Staten Island, New York. Jean is proposing to sell her share of the property to you for a price of $144,000, which is ½ of the appraised value as indicated on the New York City assessment records. *If this is agreeable and if you wish to proceed*

*with this matter, please contact me at my office and we will prepare the necessary Contracts"* (emphasis supplied).

The defendant's attorney sent a second letter, dated March 23, 2004, to the plaintiff, which stated, in relevant part: "I have not yet received a response to my letter to you of February 9, 2004 and I hope that you did receive that correspondence. My client, Jean Penalver, has asked me to follow-up on that contact and to amend the proposal. She is now proposing that you take over the mortgage payments and have her name removed from the mortgage and she will take her name off the deed. *Please call me so that we can discuss the details"* (emphasis supplied).

Thereafter, by letter dated April 5, 2004, the plaintiff replied, as follows: "This is in response to your letter dated March 23, 2004 wherein your client, Jean Penalver, proposed that I take over the mortgage payments and have her name removed from the mortgage in exchange for your client surrendering her ownership interest in the property. I have been informed today by Bank of America that my mortgage application has been approved and I therefore accept your client's offer. Bank of America would like to schedule the closing on May 4, 2004. I will consult my counsel and get back in touch with you in the near future."

On April 29, 2004, however, the defendant informed the plaintiff that she had changed her mind and that she did not want to proceed with the sale. The plaintiff then commenced the instant action seeking specific performance of the alleged contract of sale.

General Obligations Law § 5-703 provides in relevant part as follows:

"2. A contract . . . for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized in writing."

"3. A contract to devise real property . . . or any interest therein or right with reference thereto, is void unless the contract or some note or memorandum thereof is in writing and subscribed by the party to be charged therewith, or by his lawfully authorized agent."

"To satisfy the statute of frauds, a memorandum evidencing a contract and subscribed by the party to be charged must designate the parties, identify and describe the subject matter, *and state all of the essential terms of a complete agreement"* (*Walentas v 35-45 Front St. Co.*, 20 AD3d 473, 474 [2005] [emphasis sup-

plied]; *see Atai v Dogwood Realty of N.Y., Inc.*, 24 AD3d 695, 697 [2005]). " '[The] writing must set forth the entire contract with reasonable certainty so that the substance thereof appears from the writing alone . . . If the contract is incomplete and it is necessary to resort to parol evidence to ascertain what was agreed to, the remedy of specific performance is not available' " (*Checkla v Stone Meadow Homes*, 280 AD2d 510, 510-511 [2001], quoting *O'Brien v West*, 199 AD2d 369, 370 [1993]).

The "essential terms" which should be set forth for the writing to be enforceable "include those terms customarily encountered in transactions of this nature" (*O'Brien v West, supra* at 370), such as the purchase price, the time and terms of payment, the required financing, the closing date, the quality of title to be conveyed, the risk of loss during the sale period, adjustments for taxes and utilities, etc. (*see Sabetfard v Djavaheri Realty Corp.*, 18 AD3d 640, 641 [2005]; *Rahimzadeh v M.A.C. Assoc.*, 304 AD2d 636 [2003]; *O'Brien v West, supra* at 371; *Marder's Nurseries v Hopping*, 171 AD2d 63 [1991]; *Dahm v Miele*, 136 AD2d 586 [1988]). The letters herein lack *virtually all* of the foregoing terms. Although the letters identify the parties, describe the property, and indicate a proposed purchase price, they fail to set forth the manner of payment and financing, the closing date, the quality of title to be conveyed, the allocation of the risk of loss, and whether any adjustments apply for taxes and utilities. "While the omission of any of these terms, standing alone, may not have constituted a fatal omission . . . the omission of so many material terms from the [alleged] instant agreement underscores the conclusion that it was not intended to be a complete contract containing all essential terms" (*O'Brien v West, supra* at 371 [citations omitted]).

Although our dissenting colleague asserts that the exchange of correspondence was sufficient to establish a contract, we opine that the letters themselves fail to show that there was ever a meeting of the minds with respect to the alleged sale (*see DeMartin v Farina*, 205 AD2d 659, 660 [1994]). It is evident the parties expressly contemplated the subsequent execution of a more complete and formal contract of sale (*see Frankel v Ford Leasing Dev. Co.*, 7 AD3d 757 [2004]). Specifically, the letter, dated February 6, 2004, stated "please contact me at my office and we will prepare the necessary Contracts." Similarly, the subsequent letter, dated March 23, 2004, stated, "[p]lease call me so that we can discuss the details." Such language "clearly establish[es] that the agreement was to take effect only after it had been reduced to a formal written document signed by both parties" (*EDP Med. Computer Sys. v Sears, Roebuck & Co.*, 149

AD2d 563, 564 [1989]) and that the subject letters were not intended to be a complete agreement (*see Dutchess Dev. Co. v Jo-Jam Estates*, 134 AD2d 478, 479 [1987]).

We note that two of the letters relied upon by the plaintiff in support of his assertion that there was a contract to sell the subject property were not signed by the defendant but only by her attorney. There was no evidence that the defendant's attorney had been authorized in writing to bind her to any contract as her agent (*see DeMartin v Farina, supra* at 660).

In sum, where, as here, so many of the terms essential to a real estate transaction are lacking, we conclude that the subject letters fail to satisfy the statute of frauds. Accordingly, the Supreme Court properly granted the defendant's motion for summary judgment dismissing the complaint.

The plaintiff's remaining contentions are either academic or without merit. Mastro, Rivera and Florio, JJ., concur.

Spolzino, J. (concurring in part and dissenting in part and voting to affirm the order dated January 28, 2005, reverse the order dated August 30, 2005, and deny the defendant's motion for summary judgment dismissing the complaint): While I agree with my colleagues' conclusion that the order dated January 28, 2005 should be affirmed, I disagree with my colleagues' conclusion that the plaintiff's claim is barred by the statute of frauds. In my view, the letters exchanged between the plaintiff and the defendant's attorney constituted sufficient writings that the contract is enforceable. Since the plaintiff otherwise sets forth facts sufficient to establish a valid contract and the defendant's breach of that contract, I would reverse the order dated August 30, 2005, granting the defendant's motion for summary judgment dismissing the complaint.

The parties are the children of Crosette Nesbitt. In 1994 Mrs. Nesbitt conveyed her interest in the Staten Island residence that is the subject of this action to the defendant and herself as joint tenants. Several years later, she conveyed her interest in the residence to the plaintiff, retaining a life estate for herself. On February 6, 2004 the defendant's attorney wrote to the plaintiff, expressing the defendant's offer to sell her interest in the property to the plaintiff for $144,000, which was one half of its then appraised value. The plaintiff did not respond to this letter.

On March 23, 2004 the defendant's attorney wrote to the plaintiff again. In this letter, the attorney stated that the defendant "is now proposing that you take over the mortgage payments and have her name removed from the mortgage and she will take her name off the deed." The attorney requested that

the plaintiff call to "discuss the details." This time the plaintiff responded, by letter dated April 5, 2004, stating "I . . . accept your client's offer." The letter further advised the defendant's attorney that the plaintiff had been approved for mortgage financing and that the mortgagee was prepared to schedule the closing for May 4, 2004. The letter concluded that the plaintiff would "consult [his] counsel and get back in touch with you in the near future." On April 29, 2004, however, the defendant informed the plaintiff that she had changed her mind and did not wish to consummate the transaction. The plaintiff then commenced this action for specific performance.

Contrary to the conclusion reached by my colleagues, the exchange of correspondence was sufficient to establish a contract. A contract is formed by an offer and acceptance (*see Matter of Sherry*, 222 AD2d 681, 682 [1995]). Here, acting through her attorney, the defendant unequivocally offered to sell her interest in the property to the plaintiff. The plaintiff, equally unequivocally, accepted that offer. Although the defendant claims that by the time the plaintiff responded to her offer she was no longer interested in selling, she never withdrew the offer prior to the time the plaintiff communicated his acceptance to her attorney. A contract was thus formed upon the plaintiff's acceptance (*see Morton's of Chicago/Great Neck v Crab House*, 297 AD2d 335, 337 [2002]; Restatement [Second] of Contracts § 63), without regard to the defendant's reluctance to continue with the transaction.

In order to be enforceable, however, a contract for the sale of real property must be evidenced by a writing sufficient to satisfy the statute of frauds (*see* General Obligations Law § 5-703 [2]). A sufficient writing, in addition to being signed by the party to be charged, must identify the parties, describe the subject matter, and state the essential terms of the contract (*see Atai v Dogwood Realty of N.Y., Inc.*, 24 AD3d 695, 697 [2005]; *Sabetfard v Djavaheri Realty Corp.*, 18 AD3d 640, 641 [2005]; *Came Realty, LLC v Canadian Imperial Bank of Commerce*, 10 AD3d 348 [2004]; *160 Chambers St. Realty Corp. v Register of City of N.Y.*, 226 AD2d 606 [1996]). These elements may be satisfied in one document or through several documents that refer to the same transaction (*see Henry L. Fox Co. v Kaufman Org.*, 74 NY2d 136, 140 [1989]; *Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48, 54 [1953]; *Strain v Strain*, 228 AD2d 491 [1996]).

Here, there are three documents that, in my view, together satisfy the requirements of the statute of frauds. The initial letter from the defendant's attorney identified the parties to the transaction as the plaintiff, to whom the letter was addressed,

and his sister, who is identified in the body of the letter. That letter also specified, by street address, the property that was the subject of the proposed sale. The second letter from the defendant's counsel set forth the essential terms of the sale, specifically, "that you take over the mortgage payments and have [the defendant's] name removed from the mortgage and she will take her name off the deed." The plaintiff's letter in response stated his acceptance, clarifying that he would "have [the defendant's] name removed from the mortgage in exchange for the defendant surrendering her ownership interest in the property." Since these documents collectively "identified the parties, described the subject property [and] stated the time and terms of payment," they set forth the essential terms of the contract (see *Sabetfard v Djavaheri Realty Corp., supra* at 641) and are therefore sufficient to satisfy the statute of frauds.

My colleagues reach a contrary conclusion on the basis that the documents left certain terms for future negotiations and contemplated the execution of a more formal contract. I disagree. The defendant's assertion that the writings contemplated a more formal contract is not a basis for declining to enforce the contract (see *Atai v Dogwood Realty of N.Y., Inc., supra*; *Sabetfard v Djavaheri Realty Corp., supra*; *160 Chambers St. Realty Corp. v Register of City of N.Y., supra*). Even if it were, however, any need for further documents was obviated by the plaintiff's letter of April 5, 2004, in which he announced his readiness to close and proposed that the closing take place on May 4, 2004.

The defendant's argument that additional terms, such as the quality of title to be conveyed, risk of loss, and the adjustments for real estate taxes are necessary, is not, as I see it, supported by the relevant legal authority. The fact that the documents do not specify the amount of the mortgage is not fatal, since that term was readily ascertainable by the parties (see *Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 483 [1989], *cert denied* 498 US 816 [1990]; *Tetz v Schlaier*, 164 AD2d 884, 885 [1990]). Even if the plaintiff had not proposed a closing date, the absence of a closing date is not fatal since the law will presume closing within a reasonable time (see *Dahm v Miele*, 136 AD2d 586, 587 [1988]), as it will the quality of title to be conveyed (see *Ramos v Lido Home Sales Corp.*, 148 AD2d 598, 599 [1989]; *see also Vought v Williams*, 120 NY 253 [1890]). Similarly, liability for transfer taxes is defined, in the absence of an agreement to the contrary, by law (see Tax Law § 1404), as is the risk of loss (see General Obligations Law § 5-1311). The terms with respect to adjustments, to the extent not supplied by custom, are, in my view, not so essential as to defeat an otherwise valid contract.

While I agree with my colleagues that the statute of frauds also requires that a writing executed by an agent be supported by a writing setting forth the agent's authority (*see Bowling v Pedzik*, 302 AD2d 343, 344-345 [2003]; *Urgo v Patel*, 297 AD2d 376, 377-378 [2002]; *Shui Ching Chan v Bay Ridge Park Hill Realty Co.*, 213 AD2d 467, 468 [1995]), I find that assertion irrelevant to the decision here, since the issue has not been raised by the defendant.

There is no doubt, on the record presented here, that the parties formed a contract by which the defendant agreed to sell her interest in their mother's residence to the defendant. There is also no dispute that the defendant repudiated that contract. Since there is, in my view, sufficient documentation of the contract to satisfy the statute of frauds, I would reverse the order dated August 30, 2005, and deny the defendant's motion for summary judgment.