OPINION OF THE COURT
Joseph P. Dorsa, J.
*915 By notice of motion, defendants seek an order of the court, pursuant to CPLR 3211 (a) (5), dismissing the complaint and cancelling the notices of pendency on the grounds that the action may not be maintained because of the statute of frauds.
Plaintiff files an affidavit in opposition and defendants reply. Plaintiff files a surreply.
The underlying action is a claim by plaintiff for specific performance for the purchase of real property. The property in question is identified as block 15950, lots 14 and 24, in Queens County, New York.
Plaintiff alleges that, on or about March 22, 2007, the parties represented by their principals, Sol Arker, president of plaintiff Vista Developers Corp., buyer, and Allan Profeta, representing defendants VFP Realty, LLC and Alprof Realty, LLC, defendant sellers, began negotiations regarding the above identified property.
Plaintiff claims that he originally thought he had a deal on or about April 16, 2007 to purchase the property for $5,000,000, when he received a copy of Mr. Profeta’s memo to his attorney to prepare a contract with Vista Developers Corp. at that price. Later, on April 24, 2007, Mr. Arker received a copy of another memo sent to the partners of Alprof Realty and VFP Realty, indicating that there were other offers.
Later, that same day, Mr. Arker received an e-mail from Allan Profeta which stated as follows:
“Fro: AllanProfeta[mailto :profeta@premiereproperties.info]
“Sent: Tuesday, April 24, 2007 9:33 PM
“To: Sol Arker
“Subject: Rockaway
“Sol,
“I just finished speaking to my two partners.
“In order to short-stop the other two deals we agreed that if you agree with the following we will consummate the deal:
“5.4
“no due diligence
“5% deposit hard on contract
“closing on or before 12/31/2007 TOE
“If all in agreement no need to call me back just e-mail me that it is agreed to and I will instruct Peter to finish the contract (and you do the same with *916 your attorney) and possibly have a sit-down this week to lock it up.
“Let me know.
“Allan Profeta
“Premiere Properties
“2211 Avenue Z
“Brooklyn, NY 11235
“Phone: 718-646-5656
“-Fax: 718-934-7275
“ — Cell: 917-776-3382 (917-PROFETA)
“E-Mail: ProfetaPremiereProperties.Info”
The following morning, Sol Arker responded by e-mail as follows:
“Fro: Sol Arker
[mailto:SArker@arkercompanies.com]
“Sent: Wednesday, April 25, 2007 9:41 AM “To: Allan Profeta
“Cc: Allan Arker; Alex Arker; Daniel Moritz; Jon Schuyler Brooks
“Subject: RE: Rockaway
“I agree to your terms as stated herein below.
“As a courtesy, please provide me with the Phase I and soil borings you have for your site as well as the soil borings you may have for the Mormon owned site.
“FYI, our attorney left a message for your attorney yesterday (who was away from the office) to discuss the contract. I don’t object to a sit down, however, to make it effective, both attorneys should talk to each other today to flush out the issues in which they are in agreement.
“Sol Arker
“The Arker Companies
“930 Broadway
“Woodmere, New York 11598
“Office 516-374-3336 ext 317
“Fax 516-374-3326
“Cell 516-313-7400
“STARKER@ARKERCOMPANIES.COM”
Defendants maintain that negotiations continued past the date plaintiff claims, and that, on May 13, 2007, Allan Profeta *917 informed plaintiff that they would be looking to sell the property to another purchaser.
In the motion before the court, defendants seek to dismiss plaintiffs complaint pursuant to CPLR 3211 (a) (5), which holds in relevant part that a “cause of action may not be maintained because of . . . [the] statute of frauds.” Defendants also rely on General Obligations Law § 5-703 (2), which holds in relevant part: “A contract . . . for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.”
In a motion to dismiss a complaint pursuant to CPLR 3211 (a) (5), based on a claim that the statute of frauds bars the suit, “the proper allegations of the complaint must be deemed proved.” (Cohen v Kaskel, 201 Misc 146, 146 [Sup Ct, Spec Term, Queens County 1951].)
“To satisfy the statute of frauds, a memorandum evidencing a contract and subscribed by the party to be charged must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement (Walentas v 35-45 Front St. Co., 20 AD3d 473, 474 [2005] [emphasis supplied]; see Atai v Dogwood Realty of N.Y., Inc., 24 AD3d 695, 697 [2005]).” (Nesbitt v Penalver, 40 AD3d 596, 597-598 [2d Dept 2007] [internal quotation marks omitted]; see also Sabetfard v Djavaheri Realty Corp., 18 AD3d 640, 641 [2d Dept 2005].)
Defendants maintain that there is no signed writing evidencing a contract for the sale of real property, and that plaintiff, therefore, can have no claim for specific performance. (Gold v Vitucci, 168 AD2d 607, 608 [2d Dept 1990].)
Plaintiff responds that the e-mail exchanges between Allan Profeta, on behalf of VFP Realty, LLC and Alprof Realty, LLC, and Sol Arker for Vista Developer’s Corp. (plaintiffs exhibit 3) constitute a “signed writing” within the meaning of the statute of frauds making said agreement enforceable under a claim for specific performance.
“The explosive growth of electronic mail (or ‘e-mail’) as a method of both personal and business communication, often to the exclusion of conventional written documents, has raised the question *918 whether e-mail messages allegedly indicating an agreement between the sender and receiver can constitute writings satisfying the requirements of the Statute of Frauds. Courts addressing this question have largely declined to state any general rule, and have instead determined on a case-by-case basis whether the particular e-mail messages asserted by a party as evidencing an agreement satisfy the elements of the applicable Statute of Frauds provision, an approach which may imply acceptance of the general proposition that e-mails can satisfy the Statute of Frauds in a proper case. Thus, at least one court has held that e-mail messages relating to a proposed sale of real property were sufficient to prevent a breach of contract action from being dismissed on Statute of Frauds grounds where the messages were collectively sufficient to show that the parties had reached an agreement as to the essential terms of a land sale contract (§ 3[a]). Other courts, in rejecting e-mail messages offered as evidence of an alleged contract, have pointed to such particular elements as the failure of those messages to state key elements of that contract such as price, quantity, or duration, the fact that they did not come from the particular party charged with breach of the alleged contract, language indicating that the messages reflecting ongoing negotiations, rather than a completed agreement, or a simple lack of clear evidence of offer and acceptance (§ 3[b]).” (John E. Theuman, J.D., Satisfaction of Statute of Frauds by E-Mail, 110 ALR5th 277, § 2, para 2.)
In Shattuck v Klotzbach (2001 WL 1839720, 2001 Mass Super LEXIS 642, 14 Mass L Rptr 360), the Massachusetts Superior Court denied defendant’s motion to dismiss a claim to enforce a contract for the sale of property where the e-mail correspondences “[t]aken as a whole [could lead] a reasonable trier of fact [to] conclude that the e-mails sent by the defendant were ‘signed’ with the intent to authenticate the information contained therein as his act” (2001 WL 1839720, *2, 2001 Mass Super LEXIS 642, *6). The court found that the multiple writings contained all the essential elements of such a contract (i.e., the parties, the locus, the nature of the transaction and the purchase price), and that the typed name at the end of the e-mail was indicative of the parties’ intent to authenticate the message. (Id.)
*919 In paragraph 4.18 (4) of their recent treatise, The Law of Electronic Commercial Transactions (ECOMTR 1Í 4.18 [4] [Aug. 2007]), the authors, Raymond T. Nimmer and Holly K. Towle, found that their review of the case law ultimately revealed that “whether an e-mail is ‘signed’ likely will not turn on the lack of a typed-in or inserted signature at the bottom of the e-mail, but on whether the language of the e-mail or procedures surrounding it are sufficient to satisfy intent requirements.”
In the only reported case in New York that this court is aware of involving a claim for specific performance of an “e-mail” agreement for the purchase/sale of real property, the trial court found “that the sender’s act of typing his name at the bottom of the e-mail manifested his intention to authenticate this transmission for statute of frauds purposes and the copy of the e-mail in question submitted as evidence by the defendant constitutes a sufficient demonstration of same.” (Rosenfeld v Zerneck, 4 Misc 3d 193, 195-196 [Sup Ct, Kings County 2004].) Justice Kramer, the author of Rosenfeld v Zerneck (supra), found that although “the ‘signature’ on the e-mail is valid under our general statute of frauds, the e-mail messages that were exchanged in the instant matter did not create a binding agreement as they lacked a vital term.” (Id. at 194.)
In ruling as he did, Justice Kramer considered and distinguished the circumstances of both Parma Tile Mosaic & Marble Co. v Estate of Short (87 NY2d 524, 526 [1996]) and Page v Muze, Inc. (270 AD2d 401 [2d Dept 2000]).
“The fax transmission in Parma did not satisfy the statute of frauds because there was never any demonstration of the sender’s specific intent to authenticate it and not because it was electronically transmitted.” (Rosenfeld at 195.)
In Page v Muze, Inc. (270 AD2d 401 [2000]), the Court held that “a typewritten signature does not satisfy the subscription requirement of the former statute of frauds provision contained in the Uniform Commercial Code (UCS 8-319, as repealed by L 1997, ch 566, § 5).” (Rosenfeld at 196 [emphasis added].) “The rationale for that decision,” Justice Kramer wrote, “may lie in the fact that the UCC provision, unlike the general statute of frauds (General Obligations Law § 5-701 [b] [4]) . . . did not make any accommodation for the realities of doing business in our electronic age.” (Id.)
Defendants argue that the court in Rosenfeld was simply wrong in its reasoning; that General Obligations Law § 5-701 (b) (4), which provides in pertinent part, “For purposes of this *920 subdivision, the tangible written text produced by telex, telefacsimile, computer retrieval or other process by which electronic signals are transmitted . . . shall constitute a writing” (General Obligations Law § 5-701 [b] [4]), applies only to “qualified financial contracts” as defined in General Obligations Law § 5-701 (b) (2) (a) through (i), which does not include “[conveyances and contracts concerning real property” (General Obligations Law § 5-703). Defendants argue that contracts concerning conveyances for real property are dealt with separately and exclusively in General Obligations Law § 5-703, and the amendments concerning electronic transmissions, therefore do not apply in this instance.
The rules of general construction might lead one to believe otherwise.
“It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent. So, in construing a statute the court must take the entire act into consideration, or look to the act as a whole, and all sections of a law must be read together to determine its fair meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes, ch 6, § 97, at 211-213.)
Moreover, it is a rule of construction that “[a] 11 parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof.” (Statutes, ch 6, § 98, at 220.)
When reading article 5, then, the court will look to the entire article including section 5-101 (1) through (3), the definition section, which defines the terms used in section 5-703, among others, but not a “qualified financial contract,” as defendants note refers to transactions within section 5-701 (b) (2) (a) through (j). For purposes of the action before the court, “real property” as used in section 5-703 is defined as “co-extensive in meaning with lands, tenements and hereditaments” (General Obligations Law § 5-101 [3]). The definition of real property in article 5 of the General Obligations Law is identical to that used in the Real Property Law, to wit:
“§ 2. Definitions
“1. The terms ‘real property’ and ‘lands’ as used in the first eight articles for this chapter are coextensive in meaning with *921 lands, tenements and hereditaments.” (Real Property Law § 2 [1].)
Moreover, as defendants correctly note, the legislative history of the enactment of the amendment which provided for the recognition of electronic communication states in relevant part that the amendment “shall apply to qualified financial contracts” (L 1994, ch 467, § 4).
Thus, it is apparent that the intent of the Legislature was to amend the method for establishing agreements required to be in writing other than those involving contracts and conveyances concerning real property, which are purposely dealt with in a separate section of article 5.
“The purpose of the Statute of Frauds is to remove uncertainty” (Villano v G & C Homes, 46 AD2d 907 [2d Dept 1974]), and to distinguish in real estate sales provisional “agreements to agree” from final binding contracts. (Sonnenschein v Elliman-Gibbons & Ives, 274 AD2d 244, 249 [1st Dept 2000].)
Accordingly, upon all of the foregoing, it is hereby ordered that defendants’ motion is granted and the complaint is dismissed with costs and disbursements to defendants as taxed by the Clerk of the Court upon submission of an appropriate bill of costs; and it is further ordered that the County Clerk of Queens County is directed upon payment of the proper fees, if any, to cancel and discharge a certain notice of pendency filed in this action on May 21, 2007 against property known as block 15950, lots 14 and 24, and said Clerk is hereby directed to enter upon the margin of the record of same a notice of cancellation referring to this order.