[889 NYS2d 836]

Clark Construction Corporation et al., Plaintiffs, v BLF Realty Holding Corp. et al., Defendants.

Supreme Court, New York County, November 5, 2009

APPEARANCES OF COUNSEL

*Jeffrey S. Ween & Associates*, New York City (*Jeffrey S. Ween*, of counsel), for plaintiffs. *Epstein Becker & Green P.C.*, New York City (*Ralph Berman* of counsel), for defendants.

## OPINION OF THE COURT

Edward H. Lehner, J.

In this action tried before me without a jury, the parties have heretofore had at least 18 motions decided by other justices of this court and three decisions by the Appellate Division (300 AD2d 49 [2002]; 28 AD3d 367 [2006]; 54 AD3d 604 [2008]). As a consequence of these decisions, the only remaining plaintiff with a triable cause of action is Clark Construction Corporation (Clark), the claims of the individual plaintiffs (which sought relief similar to that requested by Clark) having been dismissed on parol evidence grounds.

The basic facts in controversy are set forth in the prior decisions with the only claims surviving for trial being Clark's action. Clark has occupied the second floor (the unit) of the subject building at 117-119 Hudson Street (the building) since 1993. In the complaint it alleges that in 1999 its president, Christopher Clark, came to an oral agreement with defendant William Fleischer, the president of BLF Realty Holding Corp., the then owner of the building, pursuant to which BLF would "perfect an offering plan to convert the premises and property to condominium ownership, to take all necessary action to have a condominium plan declared effective" (¶ 58), and to sell the unit to Clark for $1,344,000 (¶ 12). The relief sought is a permanent injunction restraining defendants from transferring the unit to any third party, and a direction that defendants submit an

> "offering plan to the Department of Law of the State of New York and to take all necessary steps for such offering plan to be accepted for filing by the Department of Law and for such plan to be declared effective, and upon such declaration of effectiveness, to sell the [unit] to plaintiffs in accordance with the terms of the agreement between" the parties.

In its latest decision, the Appellate Division stated "that there are issues of fact as to whether the oral contract with Clark Construction was a private or public offering" (54 AD3d at 605). However, while Clark's counsel acknowledged having found no case where a court directed a building owner to record

a condominium declaration and then prepare and file an offering plan, here the Appellate Division reversal (28 AD3d 367 [2006]) of Justice Kornreich's finding that such direction "would be impractical because it would require constant supervision . . . [and] would require the Court to determine what is an acceptable offering plan" (2004 NY Slip Op 30314[U], *7 [Nov. 24, 2004]) is an indication that the appellate court believes that such a direction could properly be made.

From the evidence and the testimony at trial, it is clear that each of the three plaintiffs contemplated a public offering and a sale to them pursuant thereto. It was evident that these three plaintiffs were sophisticated businessmen and did not put any of their alleged agreements in writing (Clark acknowledging that it consulted counsel on the issue) because they believed that any agreement to purchase in connection with a public offering would not be enforceable until a filing of an offering plan was accepted by the Attorney General (see tr at 215).* Further, the oral discussions contemplated only a conversion of the entire building to condominium ownership pursuant to such public offering.

In its posttrial memorandum of law, Clark argues (at 4) that "the ultimate agreement reached . . . constituted a private offering . . . , [and] [a]s such . . . , no offering plan was necessary as a predicate to such agreement." Paragraph 58 of the complaint, quoted above, demands a direction that defendants "perfect an offering plan to convert the premises and property to condominium ownership [and to have the] plan declared effective." Clark then argues that "the only relevance that the contemplated offering plan had to the subject transaction was in the matter of timing of closing . . . [which would be] upon the Department of Law's acceptance of the contemplated offering plan for filing." However, I find that the evidence is to the contrary as only a public offering was contemplated for all of the units in the building and, under such circumstances, the alleged oral agreement was not enforceable absent the acceptance by the Attorney General of the filing of an offering plan. But, even if the oral discussions contemplated a private offering to Clark, I find that there was no binding agreement reached between the parties.

The Appellate Division found that the

---

* All references herein to the transcript refer (unless otherwise noted) to the trial transcript of July 20, 2009.

"assertions that defendants retained a lawyer, architect and real estate broker to prepare the alleged condominium conversion, and that plaintiff paid defendant a $200,000 down payment against the purchase [price] . . . are adequate to show, absent any rebuttal from defendants, . . . partial performance of the alleged oral agreement sufficient to take it out of statute of frauds" (300 AD2d at 49).

I find that there was no such rebuttal evidence and that hence the claim is not barred by the statute of frauds. However, the fact that Clark has presented sufficient evidence of partial performance to avoid dismissal on statute of frauds grounds, admittedly does not mean that Clark has proved the existence of a binding oral agreement with defendants (*see* tr at 237).

With regard to the requirements for an enforceable agreement relating to real property, both parties agree with the statement in *Nesbitt v Penalver* (40 AD3d 596, 598 [2d Dept 2007]), that the

" 'essential terms' which should be set forth for the writing to be enforceable 'include those terms customarily encountered in transactions of this nature' . . . such as the purchase price, the time and terms of payment, the required financing, the closing date, the quality of title to be conveyed, the risk of loss during the sale period, adjustments for taxes and utilities, etc." (*see* defendants' mem of law at 10; plaintiffs' reply mem of law at 12).

The key phrase in that quote is "transactions of this nature." If I were here dealing with a contract for the sale of a single-family house, there may have been sufficient proof of essential terms to establish an enforceable contract, but this is not such a transaction. Rather, Clark is here seeking to enforce an alleged agreement for the purchase of space in the building which it asserts is to be operated as a condominium, on which there is no prepared declaration or offering plan. Such documents traditionally set forth a myriad of items which are normally essential to purchasers of condominium units. For example, Real Property Law § 339-n requires the declaration to set forth "a statement of the common interest[s] of each unit owner" the "common element[s] to which" each unit owner "has immediate access," as well as "[a]ny further details . . . which the person or persons executing the declaration may deem desirable to set forth" (§ 339-n [5], [4], [8]). Probably the most significant item to a purchaser is the common interest percentage allocable to

the unit, which allocation normally determines the common charge allocation and voting rights. Clark's counsel argues that his client doesn't care what percentage he is allocated (whether it be one fifth, one sixth or one seventh) (tr at 235-237). The absence of an agreement on this essential issue alone demonstrates the absence of a binding agreement. Also, while it is asserted that defendants agreed to make alterations to legalize the building for the intended use on conversion (tr of July 14 at 11), there is no agreement on what work was to be done, nor any agreement as to the procedure for the election of a board of managers nor to what use of common elements Clark will be entitled. Clark has suggested that some of such nondiscussed seemingly essential issues would be decided by the Attorney General (tr at 248). However, deciding the terms of the conversion and the relative rights of purchasers is not a function of the office of the Attorney General. Its role is generally to determine if there was proper disclosure or any fraud or misrepresentations in an offering plan—not to prescribe otherwise negotiable terms for the parties. (*See generally Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54 [2005]; *Council for Owner Occupied Hous. v Abrams*, 72 NY2d 553 [1988]; *Matter of Whalen v Lefkowitz*, 36 NY2d 75 [1975]; *State of New York v Fashion Place Assoc.*, 224 AD2d 280 [1st Dept 1996].)

Clark argues that defendants have pointed to no case law that the various items that affect the relationship among condominium owners, including those discussed above, "support their proposition that such elements are 'essential terms' for formation of a contract" (Clark reply mem of law at 5). That is true. But the obvious reason therefor is that Clark has not cited, as noted above, any case where a court ordered an offering plan to be filed where there has been no condominium declaration recorded nor any agreement on the terms of an offering plan.

In conclusion, since I find and declare there has been no agreement on the essential terms necessary to form a binding contract for which Clark seeks enforcement herein, its causes of action tried before me are dismissed, and the Clerk shall enter judgment dismissing its complaint, severing the counterclaims of defendants.

The counterclaims for use and occupancy against the three plaintiffs and issues with respect to the said $200,000 deposit shall be tried before me in this part on Wednesday, December 2, 2009 at 11:00 A.M.