In an action, inter alia, to recover a real estate brokerage commission, the defendant appeals from (1) an order of the Supreme Court, Westchester County (Smith, J.), dated October 23, 2015, which granted the plaintiff’s motion for summary judgment on the complaint and denied its cross motion for summary judgment dismissing the complaint, and (2) a judgment of the same court dated January 8, 2016, which, upon the order, is in favor of the plaintiff and against it in the total sum of $345,972.48.
 

 Ordered that the appeal from the order is dismissed; and it is further,
 

 Ordered that the judgment is reversed, on the law, the plaintiff’s motion for summary judgment is denied, and the order is modified accordingly; and it is further,
 

 Ordered that one bill of costs is awarded to the defendant.
 

 The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).
 

 On October 24, 2013, the plaintiff, which is a licensed real estate brokerage firm, and the defendant entered into an exclusive listing agreement concerning the sale of the defendant’s property located in New Rochelle (hereinafter the property). The listing price was $5.5 million and the agreement provided for the payment of a 6% commission. Paragraph 4 of the listing agreement provided that the defendant would be obligated to pay a commission if, during the period of the agreement, the property was sold or transferred, the property was the subject of a contract of sale, or the defendant and a buyer reached a verbal agreement regarding the material terms of a sale.
 

 On November 9, 2013, a prospective buyer, who had been introduced to the defendant by the plaintiff’s broker, made an initial offer in the sum of $4,730,000. The defendant made a counter offer in the sum of $4,800,000. Thereafter, Ken Sato, as president of the prospective buyer, made an offer by email, stating “I am willing to meet him half way at $4,755 million.” The plaintiff’s representative, Rajeev Chennattu, forwarded that email to the defendant’s principal, Luigi Rudovic, with the notation “Please reply to this email by writing ‘I agree to accept’ and I will forward that to Ken.” Rudovic replied “I agree to accept and I will forward that to Ken.”
 

 The plaintiff then prepared a purchase memorandum dated November 19, 2013, which stated that a $200,000 deposit was due upon the signing the contract and the balance of $4,555,000 was due at the closing. The memorandum did not specify how the $4,555,000 was to be paid. The memorandum further stated that the contract was contingent upon satisfactory results of a phase 1 inspection.
 

 The plaintiff claims that in December 2013, Sato informed it of new terms, which were incorporated in a memorandum dated December 4, 2013. That memorandum stated that the purchase price was $4.8 million and that the contract deposit was $200,000. However, this memorandum specified how the remainder was to be paid: the prospective buyer would pay $4.5 million at the closing by cash or certified check, and the defendant would take back a second mortgage for $300,000 payable in five years, with interest at 4%. No inspection was mentioned. Since the memorandum provided for a payment of $200,000 plus a $300,000 mortgage plus $4.5 million, which added up to $5 million, those figures were incorrect.
 

 The defendant’s attorney prepared a contract pursuant to the December 4, 2013, memorandum. The contract corrected the amount to be paid at the closing to $4.3 million. However, a revised contract provided that the purchase price of $4.8 million would be paid by the $200,000 contract deposit and the assumption of an existing mortgage on the property in the sum of $4.6 million.
 

 In January 2014, the plaintiff, the defendant, and the buyer attended a meeting, at which the defendant refused to proceed with the sale. Rudovic claimed he refused to sign the revised contract because the existing mortgage on the property only amounted to approximately $1.6 million.
 

 In this action, the plaintiff seeks to recover a brokerage commission based upon the November 2013 sales price of $4,755,000, claiming that there was a verbal agreement, made in November 2013, regarding the material terms of the sale, evidenced by Rudovic’s email agreeing to the price of $4,755,000. The plaintiff moved for summary judgment on the complaint, submitting, inter alia, the original contract, which provided for a purchase price of $4.8 million payable by a contract deposit of $200,000, a purchase-money mortgage of $300,000, and payment by cash or certified check in the sum of $4.3 million.
 

 The defendant cross-moved for summary judgment dismissing the complaint. In support of its cross motion, the defendant contended that the purchase memorandum dated November 19, 2013, “didn’t matter” because, on December 4, 2013, there was a new purchase memorandum prepared by the plaintiff with a new price of $4.8 million, with an “onerous” requirement to take back a $300,000 purchase-money mortgage, which the defendant never agreed to do. Then, in late December, the revised contract of sale provided for a contract deposit of $200,000 and no further cash payment because the buyer was taking the property subject to a pre-existing mortgage which the contract stated amounted to $4.6 million but which, in fact, amounted to approximately $1.6 million.
 

 In the order appealed from, the Supreme Court granted the plaintiff’s motion for summary judgment, and denied the defendant’s cross motion for summary judgment, finding that the brokerage agreement “expressly provides for a third alternative condition resulting in a broker’s commission being due, i.e., where defendant had reached a verbal agreement with a buyer regarding the material terms of the sale during the Agreement’s period.” The defendant appeals.
 

 The brokerage agreement is clear and unambiguous that a commission was due if there was an oral agreement as to the material terms of the sale. The brokerage agreement should be enforced according to its terms (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]; Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). However, there are triable issues of fact as to whether there was ever an oral agreement as to the material terms of the sale. Those issues of fact are evident from the plaintiff’s own motion papers, which demonstrate that there were two tentative prices purportedly agreed to, one for $4,755,000 and one for $4,800,000. Therefore, the plaintiff failed to establish its entitlement to judgment as a matter of law. The defendant’s motion papers, which reveal major issues as to payment terms, confirm that there are triable issues of fact as to whether the defendant and the prospective buyer ever reached a meeting of the minds as to the proposed contract. The essential terms of a contract of sale include “the time and terms of payment” (Nesbitt v Penalver, 40 AD3d 596, 598 [2007]; see O’Brien v West, 199 AD2d 369, 371 [1993]).
 

 The defendant’s remaining contentions are either without merit or not properly before this Court.
 

 Accordingly, the Supreme Court properly denied the defendant’s cross motion for summary judgment, but should have also denied the plaintiff’s motion for summary judgment.
 

 Chambers, J.P., Miller, Hinds-Radix and Duffy, JJ., concur.