■ Lucy Tronlone, Respondent, v Lac d'Amiante Du Quebec, Ltee, Appellant, et al., Defendants. [747 NYS2d 79] ■

Appellant argues that the law of New Jersey, and not that of New York, with respect to the sufficiency of a plaintiff's showing of product identification and exposure in an asbestos case, is applicable to the instant facts. However, we perceive no relevant conflict between the laws of New Jersey and New York as they bear upon these issues (compare James v Bessemer Processing Co., Inc., 155 NJ 279, 714 A2d 898, and In re Brooklyn Navy Yard Asbestos Litig., 971 F2d 831, 837), and, accordingly, a choice of law analysis is unnecessary (see Elson v Defren, 283 AD2d 109, 114). Under the relevant law of either jurisdiction, the court properly denied appellant's motion for summary judgment.

It is axiomatic that summary judgment is a drastic remedy

which should not be granted where there is any doubt as to the existence of a triable issue of fact (*see Andre v Pomeroy*, 35 NY2d 361, 364; *Akseizer v Kramer*, 265 AD2d 356) or where such issue is even arguable (*see Gale v Kessler*, 93 AD2d 744). The summary process "classically and necessarily requires that the issues be first exposed and delineated" (*Vern Norton, Inc. v State of New York*, 27 AD2d 13, 14-15) since "[i]ssue-finding, rather than issue-determination, is the key" (*Esteve v Abad*, 271 App Div 725, 727; *accord Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404).

In the face of appellant's contention that there was a lack of proof of identification of its product at plaintiff's decedent's place of employment and of legally significant exposure, plaintiff, through the testimony and affidavit of a surviving coworker of the decedent's at the Merkin Paint plant, the alleged site of the decedent's injury producing exposure to asbestos fibers, has raised triable issues of fact regarding appellant's liability. Specifically, decedent's coworker stated that decedent was exposed to asbestos fibers in the course of his employment at Merkin Paint. He recalled decedent unloading bags of asbestos from the cars of the trains and mixing the asbestos. He also described the "terrible" and "lousy" air quality and need to wear air filters in certain areas of the plant where decedent worked and where asbestos was present. Decedent's coworker also identified one of the brand names of asbestos fibers which decedent mixed, worked with, and was exposed to as Lake Asbestos, a Canadian company. Although he could not be sure of the spelling of the name on the bags of raw asbestos fibers, he remembered it being similar to the word "lake"—either "LAK" or "LAQ." Appellant admits that prior to 1978 the abbreviation "LAQ" was used in "limited technical uses requiring initials."

We find plaintiff's opposition sufficient to raise triable issues of fact as to (1) whether asbestos fibers manufactured by appellant were used at Merkin during decedent's employment there and (2) the frequency, regularity and proximity of the decedent's exposure to asbestos while at Merkin (*see Berkowitz v A.C. & S., Inc.*, 288 AD2d 148; *cf. Comeau v W.R. Grace & Co.*, 216 AD2d 79). Concur—Rosenberger, Rubin and Marlow, JJ.

Sullivan, J.P., and Friedman, J., dissent in a memorandum by Friedman, J., as follows: In denying the summary judgment motion by defendant-appellant Lac d'Amiante Du Quebec, Ltee formerly known as Lake Asbestos of Quebec, Ltd. (LAQ), one of the many defendants originally sued in this action, the IAS court described as "hardly overwhelming" the evidence plaintiff

offered to show that her decedent had been exposed to asbestos produced by LAQ. In my view, the IAS court's characterization understates the true weakness of plaintiff's opposition to the motion. I therefore would reverse and grant LAQ summary judgment.

It is undisputed that LAQ's sales records show that it never sold any asbestos to the decedent's employer, Merkin Paint Company (Merkin). Therefore, in order to defeat LAQ's motion for summary judgment, plaintiff was required to present something more than "surmise, conjecture, or suspicion," namely, "material facts of sufficient import to create a triable issue" (*Shaw v Time-Life Records*, 38 NY2d 201, 207). This plaintiff failed to do. Plaintiff's sole product-identification witness was Perry Russo, who had been one of the decedent's coworkers at Merkin. Russo testified at his EBT that, of the many different brands of asbestos Merkin used, one, which Russo believed to be from Canada, came in bags marked with a name that Russo thought "sound[ed] like" the word "lake," but he specifically remembered that the product's name *"wasn't spelled L-A-K-E"* (emphasis added). At another point in the EBT, Russo reiterated that the brand name in question "sounds like lake, but the word was spelled—was different than we would spell it in America." LAQ demonstrated that, during the relatively brief period between the time it commenced production and distribution of asbestos (in 1958) and the time Merkin terminated its use of asbestos (in 1959 or 1960), LAQ sold its asbestos in bags bearing the name "Lake," spelled L-A-K-E.* Russo's recollection of a Canadian brand of asbestos with a name similar to "lake," but with a different spelling, is readily explained by LAQ's demonstration that, at the relevant times, there were numerous other asbestos producers from "lake" regions in Canada, such as the Black Lake and Brampton Lake areas of Quebec ("lac" being the French word for "lake").

The uncontroverted evidence that, at the relevant time, LAQ sold its product in bags bearing the name "Lake," taken together with Russo's specific recollection that the brand name he saw on the bags of asbestos was *not* spelled L-A-K-E,

---

* LAQ did not begin placing the initials "LAQ" on its bags of asbestos until 1978, when Quebec legislation requiring the use of French business names went into effect. While a former LAQ vice-president did acknowledge that "[p]rior to 1978, the initials 'LAQ' were used only in limited technical uses requiring initials, such as invoice codes and our cable address," this admission is of no help to plaintiff. Russo specifically testified that his recollection of the brand name in question was based on his observation of bags of asbestos, not on his viewing of any invoices, documents setting forth a cable address, or any other kind of document.

excludes the possibility that Merkin used LAQ's asbestos. Since Russo's testimony, the only evidence plaintiff presented to place LAQ's asbestos at the decedent's workplace, thus completely fails to raise a triable issue on that score, LAQ's motion for summary judgment should have been granted.