## D.S. v New York City Hous. Auth.

2024 NY Slip Op 30607(U)

February 27, 2024

Supreme Court, New York County

Docket Number: Index No. 152068/2018

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     HON. ARLENE P. BLUTH

*Justice*

PART     14

-------------------------------------------------------------------------------X

D. S., an infant by his mother and natural guardian
MARIE HOWARD

Plaintiff,

- v -

NEW YORK CITY HOUSING AUTHORITY,

Defendant.

-------------------------------------------------------------------------------X

INDEX NO.     152068/2018

MOTION DATE

MOTION SEQ. NO.     002

**DECISION + ORDER ON MOTION**

NEW YORK CITY HOUSING AUTHORITY

Plaintiff,

-against-

RONDA DALRYMPLE, SALEM DAYCARE CENTER, 78-80
EAST 127TH STREET HOUSING DEVELOPMENT FUND
CORPORATION

Defendant.

-------------------------------------------------------------------------------X

Third-Party
Index No.  595150/2020

The following e-filed documents, listed by NYSCEF document number (Motion 002) 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127

were read on this motion to/for                   JUDGMENT – SUMMARY                   .

Defendant's motion for summary judgment is denied.

## Background

In this personal injury action, plaintiff asserts claims on behalf of her infant son.  She

insists that he suffered injuries from being exposed to lead paint, including brain damage, in their

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

Page 1 of 8

apartment owned by defendant. Plaintiff asserts that defendant knew, or should have known, of the existence of this hazardous condition in the premises.

Previously, this Court denied the instant motion on the ground that it was untimely (the note of issue was filed on November 18, 2021 and this motion was not filed until June 30, 2022). However, the Appellate Division, First Department found that defendant had a good faith belief that this case had settled and excused the untimely motion (*DS by Marie H. v New York City Hous. Auth.*, 2024 NY Slip Op 00452 [1st Dept 2024]). The First Department also concluded that the settlement agreement was not enforceable (*id*.). Therefore, this Court must issue a decision on the merits of the summary judgment motion. In order to avoid any party having to make a new motion, the Court is simply issuing a decision on the previously filed motion sequence 002.

Defendant points to the testimony of Ms. Andries, a purported expert in the field of public health, who is employed by the Department of Health. She admitted that the Department of Health did testing in the apartment and found five locations tested positive for lead (NYSCEF Doc. No. 85). However, she argued that this conclusion was "rescinded" after paint chip sampling was performed (*id*. at 25-26). Ms. Andries explained that the initial testing used "XRF testing," which "can be somewhat inaccurate" (*id*. at 25).

Defendant insists that although a notice to abate was initially issued for the apartment, the later recission shows that it is entitled to summary judgment. It argues that XRF testing was also performed at the daycare center where plaintiff's infant son spent 50 hours a week and that the test came back positive. Defendant contends that there was no hazardous lead paint condition in the apartment. It argues that the only evidence of lead-based paint in the apartment was the XRF testing and that the positive test results should be ignored.

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

**Page 2 of 8**

Plaintiff contends in opposition that the person who took the lead paint samples for testing never reviewed or saw an inspection report for this testing. She insists that this shows that there is no dispositive evidence that the subject apartment contained no lead paint. Plaintiff emphasizes that there was cracked, peeling and chipped paint in the apartment. She emphasizes that her infant son tested positive for elevated lead levels in his blood.

Plaintiff points out that although defendant insists that the five positive lead findings on June 19, 2017 were later "rescinded," defendant's moving papers do not address the July 11, 2017 test which purportedly confirmed the existence of lead paint in the apartment. Plaintiff also observes that defendant plastered certain areas of the apartment, which raises questions about the efficacy of the testing. She insists that the existence of lead paint at her child's daycare does not prove the absence of lead paint in her apartment.

Plaintiff contends that there are numerous issues of fact that should compel the Court to deny the instant motion, including "i) whether the Apartment contained peeling lead-based paint; (ii) whether a lead-paint hazard in the Apartment was a cause of the Infant Plaintiff's lead poisoning; (iii) when Defendant performed remedial repairs; (iv) whether these repairs negate the City's decision to rescind the Abatement Order; (v) whether the EMSL Analytical Testing dated July 11, 2017 is evidence that a hazardous lead-based condition existed in the Apartment; (vi) whether Defendant had actual and/or constructive notice of the peeling lead-based paint hazard; and (vii) the credibility of the parties and their witnesses" (NYSCEF Doc. No. 105 at 23).

In reply, defendant claims that there was no lead-based paint in the apartment and that all tests of the premises came back negative. It argues that the "positive test" on July 11, 2017 was not "positive" as the elevated levels of lead did not meet the standard for "lead contaminated dust" under the relevant codes. Defendant maintains that the infant plaintiff's older siblings

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**                    **Page 3 of 8**
**Motion No.  002**

3 of 8

never tested positive for elevated blood lead levels and that the infant plaintiff only had elevated lead levels in his blood after he started attending the daycare.

**Discussion**

To be entitled to the remedy of summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (*id*.). When deciding a summary judgment motion, the court views the alleged facts in the light most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bonafide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec, Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

As an initial matter, the Court observes that defendant's memorandum of law does not argue that defendant lacked notice of the alleged lead paint condition. Nor did defendant contest

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**                               **Page 4 of 8**
**Motion No.  002**

4 of 8

the fact that the infant plaintiff has elevated lead levels in his blood; in any event, plaintiff raised any issue of fact on this issue in opposition by submitting her child's medical records (NYSCEF Doc. No. 113).

Rather, defendant claims that the evidence shows that there was, as a matter of law, no such lead paint in the apartment. However, the Court finds that there is a clear issue of fact with respect to whether there was lead paint in the apartment that caused the infant plaintiff to experience elevated lead in his blood. The fact is that the NYC Department of Health and Mental Hygiene issued a notice to abate that found "that the above home unit contains lead based paint with a concentration of lead equal to or greater than 1.0 milligram of lead per square centimeter, which is peeling and/or located on one or more window friction surfaces, or on another surface that the Department has determined to be a lead hazard, because of its condition, location, or accessibility to children" (NYSCF Doc. No. 86).

That the Department of Health later rescinded the violations only raises more questions (and therefore issues of fact) about whether there was lead paint in the apartment. The rescission notice does not contain any specific affirmative findings that there was no lead paint in the apartment; it merely canceled the violations (NYSCEF Doc. No. 86 at 22). At her deposition, Ms. Andries (the DOH employee who sent the cancellation letter) asserted that the cancellation was based on the subsequent testing of various lead paint chips at five locations (NYSCEF Doc. No. 85 at 27). But that assertion was not reflected in the cancellation notice.

Moreover, the person who took the paint chip samples (Mr. Benyaguyev) testified at his deposition that he never prepared or saw a report about the paint chip samples (NYSCEF Doc. No. 87 at 11-12). Nor was any analysis or report about the paint chips testing submitted on this motion. It is quite curious that there would be no report drafted analyzing the paint chip testing

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

**Page 5 of 8**

and how those results should be reconciled with the earlier XRF test results. Without such a report, the Court cannot conclude that the later testing of five paint chip samples means, as a matter of law, that the apartment had no lead paint in it whatsoever.

Critically, an analysis could address the most glaring issue of fact for this Court—the use of the XRF testing. Ms. Andries admitted that an XRF machine was used to obtain the initial positive test results (NYSCEF Doc. No. 85 at 22) and that this type of test is often used by the Department of Health, such as on painted furniture (*id*. at 34). However, Ms. Andries testified that the XRF machines "can be somewhat inaccurate" (*id*. at 25). Yet she never specifically testified that the XRF test here was inaccurate or faulty in some way; simply arguing that these tests could be somewhat inaccurate is not a basis upon which this Court can completely ignore the initial positive test.

And of course, completely unexplained is the fact that this XRF test was used to justify issuing a notice to abate. Obviously, this test could not be that inaccurate if it was used as the basis for a serious directive from the Department of Health. The failure to abate a nuisance comes with serious consequences. Surely, the Department of Health would not utilize a test that it knew was inaccurate as the basis to issue such a notice to a landlord. Moreover, there is no indication, for instance, that the XRF test is some sort of preliminary test that must be followed up with a more accurate procedure.

This confusion about the accuracy of the XRF test is compounded by the fact that defendant seeks to place the blame for the infant plaintiff's elevated lead blood levels on the daycare plaintiff used for her son. The positive finding of lead paint at the day care was based on *XRF testing* (*id*. at 41-42). In other words, defendant cannot have it both ways. It cannot wave

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

**Page 6 of 8**

6 of 8

away the positive XRF findings found in the apartment but then blame the daycare because there were positive XRF findings there.

More broadly, the primary issue is the standard on a motion for summary judgment. It may very well be the case that testing lead paint chips is a better and more accurate form of testing for the existence of lead paint. But even if (and there is no report submitted) a few paint chips later tested negative for lead, that does not necessarily negate the prior positive tests in their entirety. Nowhere did Ms. Andries testify that the later paint chip testing means that the prior XRF testing could be completely ignored. And, as noted above, there was no report submitted, either from Ms. Andries or some expert, to explain why the negative paint chip test result is indisputable proof that the XRF test in this instance was a false positive. Ms. Andries could only speculate as to the XRF testing done here as she did not perform it.

**Summary**

In order to grant a motion for summary judgment dismissing an entire case, a drastic remedy, the Court must be satisfied that there are no material issues of fact. Here, there is an issue of fact concerning the presence of lead paint in the apartment. Defendant's argument rests solely on the rescission of a notice to abate issued by the Department of Health. But this rescission letter did not provide any specific reasoning nor was there any analysis drafted to explain the implications of the negative paint chip test results.

Instead, defendant makes the rhetorical leap from arguing that the negative test result somehow is conclusive proof that there was no lead paint in the apartment at all despite the fact that there is no dispute that the infant plaintiff has elevated lead levels in his blood. And defendant's claim that the infant plaintiff's condition arises from his daycare is belied by the fact that this argument is based on a test that is apparently "somewhat inaccurate." The fact is that

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

**Page 7 of 8**

7 of 8

[* 7]

the defendant simply did not submit indisputable evidence sufficient for this Court to ignore the infant plaintiff's elevated lead blood levels or the initial positive test.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is denied.

| 2/27/2024 | | | | ARLENE P. BLUTH, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**152068/2018   DS AND INFANT, vs. NEW YORK CITY HOUSING**
**Motion No.  002**

Page 8 of 8