| |
|---|
| **Rivera v Jewish Home Life Care** |
| 2024 NY Slip Op 33887(U) |
| October 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 159441/2018 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. ARLENE P. BLUTH**          PART          14
                                    *Justice*

------------------------------------------------------------------------------X

ELENORA RIVERA, Individually and ELENORA
RIVERA, as ADMINISTRATOR of the Estate of
ANTONIA TORRES, Deceased,
                             Plaintiffs,

                    - v -

THE JEWISH HOME LIFE CARE D/B/A THE NEW
JEWISH HOME,
                             Defendant.

------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159441/2018 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96

were read on this motion to/for          JUDGMENT - SUMMARY          .

Defendant's motion for summary judgment and to strike a bill of particulars is granted in part and denied in part.

**Background**

This action concerns the last few months of Antonia Torres' life (the "decedent"). Ms. Torres entered defendant's nursing home on October 10, 2017. At that point, the decedent was 94 years old and suffered from many maladies including dementia, heart failure and a pressure ulcer. There is no dispute that on December 27, 2017, the decedent was taken to Mount Sinai Hospital after a nurse discovered that decedent had suffered numerous facial injuries. On this record, no one knows exactly what caused these injuries (it may have been from a fall or some other reason). No witness testified that he or she observed the fall or how these injuries otherwise occurred and, unfortunately, the decedent died a few days later on January 7, 2018.

[* 1]

Defendant moves for summary judgment on the ground that it did not violate the Public Health Law, it was not negligent nor is it liable for medical malpractice or wrongful death. It relies upon the affirmation from its expert, Dr. Diamond, who contends that the decedent passed away due to severe sepsis and not from the injuries she suffered at defendant's nursing home (NYSCEF Doc. No. 40, ¶ 15). Dr. Diamond also opined that "that the medical records are devoid of any evidence that suggests decedent sustained a fall or that she was the victim of any assault or battery" and that "the cause of the decedent's injuries is inconclusive and it would be blind speculation to attribute the injuries to either a fall or an assault" (*id*. ¶ 12). It claims that plaintiffs cannot rely upon the doctrine of res ipsa loquitor on the ground that plaintiffs did not establish that the decedent's injuries were not the type that would occur in the absence of negligence.

In opposition, plaintiffs contend that the decedent received subpar care from defendant. They observe that the decedent's care plan was not followed and that defendant did not properly monitor her. Plaintiffs argue that defendant did not offer any plausible explanation for how the decedent suffered the injuries that caused her to be sent to the emergency room at Mt. Sinai Hospital. They theorize that she fell and that the nurse attending to the decedent failed to timely report her fall. Plaintiffs emphasize that the decedent was not ambulatory and required fully dependent care. They blame the defendant for the decedent's injuries and her death.

**Discussion**

To be entitled to the remedy of summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

**Page 2 of 11**

(*id*.). When deciding a summary judgment motion, the court views the alleged facts in the light most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492, 955 NYS2d 589 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bonafide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec, Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

As defendant moves for summary judgment on all of plaintiffs' seven causes of action, the Court will consider each claim in turn.

**Public Health Law, Medical Malpractice & Wrongful Death Claims**

Plaintiffs' first, third and fifth causes of actions are for violations of the Public Health Law, a medical malpractice claim and for wrongful death.

"As pertinent here, Public Health Law § 2801–d (1) provides that '[a]ny residential health care facility that deprives any patient of said facility of any right or benefit ... shall be liable to said patient for injuries suffered as a result of said deprivation, except as [otherwise] provided.... For the purposes of this section, 'injury' shall include, but not be limited to, physical harm to a patient; emotional harm to a patient; death of a patient; and financial loss to a patient.' Public Health Law § 2801–d (2) states that, '[u]pon a finding that a patient has been deprived of a right

**159441/2018 RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No. 002**

**Page 3 of 11**

3 of 11

or benefit and that said patient has been injured as a result of said deprivation ..., compensatory damages shall be assessed in an amount sufficient to compensate such patient for such injury'" (*Hauser v Fort Hudson Nursing Ctr., Inc.*, 202 AD3d 45, 48-49, 161 NYS3d 45 [3d Dept 2021]).

"The express language of Public Health Law § 2801–d (1) provides that a nursing home facility is liable to a 'patient' for 'injuries suffered as a result of' the deprivation of a right or benefit conferred by any contract, statute or regulation, expressly defining 'injury' to include death of a patient" (*id*. at 49).

"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (*Schwartz v Partridge*, 179 AD3d 963, 964, 117 NYS3d 300 [2d Dept 2020] [internal quotations and citations omitted]).

"The elements of a cause of action to recover damages for wrongful death are (1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent and (4) the appointment of a personal representative of the decedent" (*Chong v New York City Tr. Auth.*, 83 AD2d 546, 547, 441 NYS2d 24 [2d Dept 1981]).

The Court denies the branch of the motion for summary judgment these causes of action as the expert opinions offered by plaintiffs raise issues of fact concerning the cause of the decedent's injuries. Plaintiffs included the affirmation of a Dr. Pearl who claims that defendant departed from the applicable standard of care (NYSCEF Doc. No. 80). Dr. Pearl noted that the decedent's care plan required that two people change the decedent's diaper but that the video footage showed the only one person was assigned to do so in the days leading up to the accident

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

**Page 4 of 11**

4 of 11

[* 4]

(*id*. ¶ 17). She suggested that the injuries suggest that the decedent fell and suffered injuries to her face (*id*. ¶ 22). Dr. Pearl also noted that the nurse on staff, Jose Hernandez, claimed he first noticed these injuries on the decedent while she was in bed and stressed that "If Hernandez's testimony is true, someone had to have picked Ms. Torres up and put her back in the bed as medically she could not do so hereself [sic]" (*id*. ¶ 23).

Dr. Pearl opined that "Within a reasonable degree of medical certainty, I can say that Mrs. Torres died from a trauma that occurred during the morning hours of December 27, 2017 under the care of LPN Coleman. I believe the facility was short staffed and was not able to provide the two person assist required for Antonia's care which ultimately lead to her death as determined by autopsy. I say this in addition to the numerous standards of reasonable medical care that were not provided for her throughout her admission" (*id*. ¶ 34).

Also included was the expert affirmation from Dr. Zazag who concluded that "In sum, it is my opinion, within a reasonable degree of medical certainty, that the traumatic injuries that the decedent suffered on 12/27/2017 at the New Jewish Home were consistent with a fall and that said traumatic injuries leading to her hospital admission were a substantial factor in her premature death on 1/7/2018" (NYSCEF Doc. No. 85, ¶ 7). Dr. Zazag insisted that decedent's injuries were the result of a fall (*id*. ¶ 19) and that the decedent did not cause her own fall because she was wheelchair bound (*id*. ¶ 22).

These expert affirmations from plaintiffs clearly raise an issue of fact as to whether defendant may be liable under these causes of action.  There is no dispute that the decedent was taken to Mt. Sinai from defendant's facility because of serious injuries to her face.  And defendant's expert admits that "the cause of the decedent's injuries is inconclusive" (NYSCEF Doc. No. 40, ¶ 12).  That admission, combined with plaintiffs' experts, compels the Court to

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**                        **Page 5 of 11**
  **Motion No. 002**

5 of 11

[* 5]

deny this branch of defendant's motion. A fact finder must evaluate the cause of the decedent's injuries and assess plaintiffs' experts' contention that a fall caused it.

And while defendant is correct that the autopsy report, which identified the cause of death as "blunt force trauma to the head, torso and lower extremities", is hearsay, the fact is that "hearsay evidence may be utilized in opposition to a motion for summary judgment" although "such evidence is insufficient to warrant denial of summary judgment where it is the only evidence upon which the opposition to summary judgment is predicated" (*Narvaez v NYRAC*, 290 AD2d 400, 400-01, 737 NYS2d 76 [1st Dept 2002]). Here, the autopsy report is not the only evidence—there are photos of the decedent's injuries (NYSCEF Doc. No. 69), medical records, and a nurse's testimony that he noticed dried blood in the left ear area of the decedent's ear (NYSCEF Doc. No. 75 at 47). That is, no one disputes that the decedent suffered injuries to her face while at defendant's facility that required her to be transported to the hospital.

Moreover, because, on this record, no one knows exactly how the injuries occurred, plaintiffs are entitled to rely upon the doctrine of res ipsa loquitor. "Under appropriate circumstances, the evidentiary doctrine of res ipsa loquitur may be invoked to allow the factfinder to infer negligence from the mere happening of an event. Res ipsa loquitur, a doctrine of ancient origin derives from the understanding that some events ordinarily do not occur in the absence of negligence. In addition to this first prerequisite, plaintiff must establish, second, that the injury was caused by an agent or instrumentality within the exclusive control of defendant and, third, that no act or negligence on the plaintiff's part contributed to the happening of the event" (*States v Lourdes Hosp.*, 100 NY2d 208, 211, 762 NYS2d 1 [2003] [discussing the doctrine res ipsa loquitor in the context of a medical malpractice case]).

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

**Page 6 of 11**

[* 6]

Here, plaintiffs met their burden to raise an issue of fact under this doctrine. They persuasively argue that a patient in a nursing home who is not ambulatory and suffers injuries that are consistent with a fall constitutes events that do not occur in the absence of negligence. Because defendant did not provide conclusive evidence about how these injuries occurred, in fact, it claims it does not know, this Court is unable to grant defendant summary judgment. Unfortunately, the injured nursing home patient subsequently passed away and so there is no first-hand witness as to the exact cause of her injuries. Therefore, a jury must evaluate the circumstantial evidence and the expert witnesses when reaching a factual determination about the cause of the decedent's injuries.

The Court recognizes that defendant claims that the doctrine of res ipsa loquitor is not applicable here. It insists that "there are a number of potential causes of plaintiff's injuries, including that the injuries were self-inflicted" or "that the injuries were caused by intentional conduct, which defendant nursing home denies, but would amount to a non-negligent cause" (NYSCEF Doc. No. 38). But defendant did not present any evidence to establish as a matter of law how decedent suffered these injuries. That there may be a variety of explanations for the decedent's injuries is not a reason to grant defendant summary judgment or bar the use of the res ipsa loquitor doctrine. Obviously, decedent's face did not spontaneously suffer those injuries.

**Negligence**

For the reasons described above, the Court also denies the branch of the motion that seeks summary judgment on the negligence cause of action. Plaintiffs raised an issue of fact that the decedent's injuries would not normally occur in the absence of negligence. Put another way, plaintiffs offered a rational theory for how the decedent was injured and defendant did not, as a matter of law, establish how it actually occurred.

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**     **Page 7 of 11**
**Motion No.  002**

[* 7]

7 of 11

The Court also observes that the parties discuss a claim for "gross negligence" in their papers. However, the amended complaint does not contain a specific cause of action for gross negligence. To the extent that this discussion relates to plaintiffs' demand for punitive damages, the Court declines to dismiss such a demand. A jury could rationally conclude that plaintiffs might be entitled to punitive damages if they believe Dr. Pearl's assertion that an employee for defendant saw the decedent on the floor after her purported fall, put her back in the bed and did not report it. This Court makes no finding about whether that occurred; but it is a conceivable interpretation of the circumstantial evidence submitted on this motion.

**Negligent Hiring**

"A cause of action for negligent hiring and retention requires allegations that an employer knew of its employee's harmful propensities, that it failed to take necessary action, and that this failure caused damage to others" (*Waterbury v New York City Ballet, Inc.*, 205 AD3d 154, 160, 168 NYS3d 417 [1st Dept 2022]).

Defendant contends that the amended complaint only contains vague assertions about the competency and training of the staff. It asserts that plaintiffs did not identify which employee was negligently hired, supervised or trained. Defendant maintains that because it is already vicariously liable for the medical treatment provided by its staff, it cannot be held liable under a negligent hiring claim.

Plaintiffs contend that the decedent was not properly repositioned (according to the medical records from the days leading up to her injuries) and that defendant did not utilize the required number of employees to care for the decedent. They argue that only a single nurse was observed in video footage attending to the decedent.

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

Page 8 of 11

The Court severs and dismisses this cause of action as plaintiffs did not sufficiently address how any employee was negligently hired. They did not make any arguments about any specific employee's "harmful propensities," that defendant knew of them, and failed to take appropriate action. Plus, as the Appellate Division, First Department has held "Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training" (*Karoon v New York City Tr. Auth.*, 241 AD2d 323, 324, 659 NYS2d 27 [1st Dept 1997]).

**Assault**

The Court observes that plaintiffs withdrew this claim in NYSCEF Doc. No. 93.

**Loss of Service Claim**

The Court denies the branch of the motion that seeks to dismiss this cause of action. Defendant's arguments related to this claim rely on the fact that the medical malpractice claim is not viable. As the Court has found that there is an issue of fact for that cause of action, the Court declines to dismiss this claim.

**Bill of Particulars**

Defendant also seeks to strike a "supplemental" bill of particulars served by plaintiffs on September 22, 2023. It explains that plaintiffs allege, for the first time, that decedent suffered damages related to pressure ulcers. Defendant argues that plaintiffs' previous bills of particulars only mentioned injuries from a fall or an assault. It maintains that raising a new claim of an

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

**Page 9 of 11**

9 of 11

injury just one month before the note of issue was filed and more than five years after the action was commenced is prejudicial. Defendant highlights that counsel for plaintiff attempted to question a nurse for defendant about the pressure ulcers but that defendant's counsel objected, after which counsel for plaintiff ceased this line of questioning.

Plaintiffs contend that defendant waived any objection about the supplemental bill of particulars by not raising any issues at a discovery conference in September 2023. They also emphasize that it was served before the note of issue was filed.

The Court grants this branch of defendant's motion. CPLR 3402(b) provides that "a party may amend the bill of particulars once as of course prior to filing the note of issue." There is no dispute that plaintiffs already filed a prior amended bill of particulars (NYSCEF Doc. No. 89). Therefore, the question is whether the most recent bill of particulars is "supplemental" or "amended." The Court finds that the most recent bill of particulars was not supplemental as it alleged new injuries not previously identified in prior bills of particulars (*Licht v Trans Care N.Y., Inc.*, 3 AD3d 325, 326, 771 NYS2d 1 [1st Dept 2004] [noting that self-labeling a bill of particulars did not change the fact that plaintiffs added a new injury not previously claimed]). Adding a new injury, the pressure ulcers, required plaintiffs to make a motion in order to amend their bill of particulars for a second time. That they did not requires the Court to strike it. Calling it a supplemental bill of particulars does not alleviate their duty to make a motion where the subject bill of particulars is clearly an amendment and not mere supplementation.

**Summary**

The facts of this case are that a wheelchair-bound patient was in a nursing home and then was transferred to a hospital after suffering facial injuries and this patient died a few days later while still in the hospital. Whoever knows what happened has not told and it is not part of this

**159441/2018   RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No.  002**

Page 10 of 11

record. The experts disagree. That compels the Court to find that many of these claims must go to a jury; as the finder of fact, the jury will have to decide what caused the decedent's facial injuries and who was responsible. Defendant did not meet its burden on a motion for summary judgment to dismiss plaintiffs' claims.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is granted to the extent that the causes of action for negligent hiring and assault are severed and dismissed and the supplemental bill of particulars is stricken, and the remaining branches of the motion are denied.

| 10/30/2024 | | ARLENE P. BLUTH, J.S.C. |
|---|---|---|
| **DATE** | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**159441/2018 RIVERA, ELENORA vs. JEWISH HOME LIFE CARE**
**Motion No. 002**

Page 11 of 11

11 of 11