**Wise v 1614 Madison Partners, LLC**

2025 NY Slip Op 31094(U)

April 3, 2025

Supreme Court, New York County

Docket Number: Index No. 154592/2022

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. ARLENE P. BLUTH                          PART                    14

_Justice_

------------------------------------------------------------------------------- X

BRETT WISE on behalf of himself and all others similarly
situated,

                                        Plaintiff,

                          - v -

1614 MADISON PARTNERS, LLC,

                                        Defendant.

------------------------------------------------------------------------------- X

| | |
|---|---|
| INDEX NO. | 154592/2022 |
| MOTION DATE | 03/31/2025 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244

were read on this motion to/for                          SUMMARY JUDGMENT                          .

Plaintiff's motion for partial summary judgment is denied as plaintiff did not meet his

prima face burden.

**Background**

Plaintiff brings this class action about a rental building in Ridgewood. He claims that he

is a resident of a building owned by defendant and that the defendant received 421-a tax benefits.

"Section 421–a of the Real Property Tax Law provides for an exemption from local taxation for

certain new multiple dwellings. It explicitly provides authority for a local housing agency in a

city with a population of one million or more to exclude certain new multiple dwellings through

the passage of a local law" (_Kew Gardens Dev. Corp. v Wambua_, 103 AD3d 576, 577, 961

NYS2d 48 [1st Dept 2013]). A building, such as the one owned by defendant, receives property

tax exemptions (the taxes get phased in over a specified time period) and, in exchange, the

[* 1]

apartments are classified as rent stabilized. That means that any increases in rent are set by the Rent Guidelines Board ("RGB"). Plaintiff contends, as an example, that defendant's 2024 tax bill was $57,363.20 instead of the $808,891.91 in property taxes it would owe had defendant not participated in the 421-a program.

Here, plaintiff complains about the initial legal regulated rent for his apartment (he was not the initial tenant). That initial rent is the rent from which all subsequent rent increases are based. This number is critical: the higher the initial rent, the more the landlord can charge when the RGB approves yearly rent increases for rent stabilized apartments. Plaintiff complains that defendant did not register the rents at the building with the rent that was actually charged and paid by the initial tenants as required.

Plaintiff explains that in other rent stabilized contexts, landlords will use a preferential rent to preserve their ability to legally increase rents. For instance, a landlord might be able, pursuant to the rent stabilization statutes, to charge $2,500 for an apartment but might only be able to find someone to rent the unit for $1,700. The landlord can charge the $1,700 as a preferential rent while maintaining the $2,500 as the "legal regulated rent" in case the market produces a tenant willing to pay that amount in the future.

In the 421-a context, the issue is the initial rent. Plaintiff contends that defendant attempted to circumvent the initial rent by offering concessions when, according to the applicable law, it was bound to register the actual rent charged as the initial rent. Plaintiff maintains that defendant did this by registering a higher initial rent but charging a lower amount by offering false concessions, such as a free month for ongoing construction, even though construction was actually completed.

**154592/2022   WISE, BRETT vs. 1614 MADISON PARTNERS, LLC**
**Motion No.  003**

Page 2 of 11

For plaintiff's apartment, he contends that the initial tenants were listed as paying $2,395 per month despite the fact that they received a credit of two free months. That credit meant the actual rent they paid was $2,040.19 per month. The two-month credit was justified via a Construction Concession Rider and an Early Occupancy Rider. He insists that "all" of the building's initial tenants had a construction rider while "almost all" the first tenants had an early occupancy agreement.

Plaintiff argues that although the construction rider stated that construction was ongoing, the facts adduced in this action show that construction was actually completed prior to the issuance of these concessions. He attaches a "completion of construction affidavit" signed by the building's architect on September 27, 2017 (NYSCEF Doc. No. 176) in support of his assertion that there was no basis for a construction concession. Plaintiff contends that during discovery, it acquired a concession ledger that shows that these construction concessions were used until November 2018 (NYSCEF Doc. No. 188). He also points to the deposition of defendant's witness who, when asked about ongoing construction in the lobby, the health club, the laundry room and the hallways, could not recall any such construction (NYSCEF Doc. No. 163 at 9).

With respect to the early occupancy riders, plaintiff insists that this concession was given for no reason at all; it simply permitted the initial tenants to move in prior to "your approved lease commencement date." Plaintiff maintains that these early occupancy agreements were, according to defendant's witness, used to "entice" a potential tenant to rent at the building (NYSCEF Doc. No. 162 at 87). In support of the motion, plaintiff also attached numerous photographs from Google Streetview and StreetEasy that he claims shows the building and its amenities were completed prior to the initial tenants moving in and in direct contravention of the construction concession.

Plaintiff's point is that these concessions were simply used by defendant to charge lower rents while still attempting to register a higher initial rent, so that defendant could then raise the rent based on that higher amount.

In opposition, defendant argues that plaintiff only included an affirmation of counsel in support of the motion and therefore plaintiff did not meet his prima facie burden. It observes that the central issues in this motion are whether the early occupancy agreements and the construction concessions were entered properly. Defendant argues that construction continued at the building through 2019 and so the motion should be denied.

Defendant argues that this type of project would never have been built if not for the tax breaks and that this site used to be warehouses. It contends that the initial rents charged and paid were "modest" given the size of the units and the amenities offered. Defendant maintains that it did not drastically raise rents from the time the units were first occupied and that there is no dispute it properly treated the units as rent stabilized.

Defendant explains that the initial rent for new construction under these circumstances is set by 28 RCNY § 6-04 but that, in practice, the permissible amount is usually well in excess of what might be obtained on the open market. Defendant argues that it is bound to register the "amount actually charged and actually paid" and that nothing requires the lowering of the legal regulated rent due to a rent concession. It insists that the legal regulated rent does not refer to effective rents, concessions or other considerations.

Defendant argues that public policy favors the utilization of limited concessions and that such concessions are necessary to get tenants in housing as soon as possible. It concludes that both of the concessions used here, the early occupancy and the construction, were permissible.

Defendant maintains that its witness never conceded that these concessions were preferential rents.

In reply, plaintiff emphasizes that defendant did not offer any specific evidence that there was ongoing construction in its opposition. He points out that not only did defendant's architect file a sworn affidavit stating that construction was completed, but that the building's certificate of substantial completion shows only cosmetic items remained.

**Discussion**

To be entitled to the remedy of summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (*id.*). When deciding a summary judgment motion, the court views the alleged facts in the light most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bonafide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec,*

*Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

**Plaintiff's Prima Facie Case**

The initial question for this Court is whether plaintiff met his prima facie burden on his causes of action. Plaintiff brings overcharge claims that seek both monetary damages and declaratory relief. This Court initially denied defendant's motion to dismiss and the Appellate Division, First Department affirmed, noting that defendant "did not utterly refute the allegations that certain purported construction concessions were in fact not to reimburse the tenants for inconveniences arising from construction work, but rather, were part of a fraudulent scheme to register the initial rents charged at inflated amounts" (*Wise v 1614 Madison Partners, LLC,* 214 AD3d 550, 550, 186 NYS3d 613 [1st Dept 2023]).

Plaintiff, therefore, was required to make an initial showing that defendant overcharged tenants by offering construction concessions even though there were no actual inconveniences due to ongoing construction work. In fact, the construction concession provided that "the building has continuing construction work" and that "there will be continued work in the Building in order to complete various public areas including, but not limited to, the lobby, hallways, health club, laundry facilities, etc. Tenant fully understands that there will be ongoing construction work in the Building that may result in noise, dust and other inconveniences may be associated with construction and implementing building services for the first time" (NYSCEF Doc. No. 222, ¶ 2).

The Court observes, as defendant points out, that there is nothing in plaintiff's moving papers from someone with actual knowledge about the veracity of the claims asserted in the construction concessions. That is, plaintiff did not produce an affidavit from an initial tenant that

said, for instance, that although he or she signed a construction concession, the was no actual inconvenience due to construction. This lack of evidence compels the Court to deny the motion on the ground that plaintiff did not meet his initial burden on a motion for summary judgment.

To be sure, plaintiff was permitted to introduce documents through an attorney's affirmation (*Najera-Ordonez v 260 Partners, L.P.*, 217 AD3d 580, 581, 192 NYS3d 35 [1st Dept 2023] [permitting submission of documents through an attorney's affirmation in a similar context]). And it is true that defendant does not deny the authenticity of many of the documents cited by plaintiff including the affidavit of the architect about the completion of construction and the concessions. Plaintiff also aptly noted that the rent roll is a government document retained by DHCR (NYSCEF Doc. No. 189).

The issue for plaintiff is that these documents, while persuasive, do not suggest that summary judgment is appropriate here. As noted above, the Court's inquiry, as defined by the Appellate Division, is whether the construction concession had a legitimate basis (ongoing construction) or whether it was part of a scheme to artificially register higher initial rents. Such a determination—the existence of such scheme—is a difficult proposition to show in any action. And here the documents just don't meet the high standard required for a summary judgment motion. Not one tenant in this class action submitted an affidavit to say he or she received a construction concession but there was no ongoing construction or inconvenience.

The closest plaintiff gets is the affidavit of the defendant's architect that all construction was completed (NYSCEF Doc. No. 176). However, this affidavit contends that there were 21 outstanding requirements necessary for the building to obtain a final certificate of occupancy. This architect was not deposed nor did plaintiff include an expert affidavit to explain the significance of this affidavit and how it shows that construction was actually done. In other

words, the Court cannot make the leap from this affidavit to plaintiff's suggested finding that the construction concessions were a sham.

And, of course, fulfilling the requirements for a certificate of occupancy does not necessarily mean that all the amenities are ready to be used and that no one will be inconvenienced by ongoing work. Even cosmetic work can be messy and dirty and annoying for tenants. And the construction concession highlights specific unfinished items that could have been addressed by plaintiff but were not. The concession mentions the hallways, the lobby, the health club and laundry facilities that were allegedly unfinished. While plaintiff attached Google Streetview and StreetEasy images, that is not dispositive proof that these amenities were actually completed because they were not introduced by someone with personal knowledge swearing that the images accurately reflected the condition on a specific date. Curiously lacking was an affidavit from a tenant saying she got the concession, but she used the well-equipped gym on day one and was doing laundry in the finished laundry room the first week.

That is, plaintiff did not find an initial tenant who claimed that these photos are fair and accurate depictions of what these facilities looked like when he or she moved in which would raise serious questions about the veracity of the construction concession. The Court is unable to embrace a StreetEasy photo (which defendant claimed was staged) as a basis for summary judgment where it was only introduced by an attorney and no context was included to specifically contradict the construction concession. And the fact that defendant's witness could not recall whether or not there was construction at his deposition (NYSCEF Doc. No. 163 at 9) is not dispositive proof that there was no construction.

**Public Policy Arguments**

The Court emphasizes that its decision is based only on plaintiff's failure to make an initial showing on his causes of action. The Court rejects defendant's assertion that public policy should compel the Court to deny the motion. Defendant stresses that the 421-a program was designed to help encourage developers to construct much-needed housing and to get tenants into these buildings, even before construction is fully complete. Defendant claims it is ultimately up to the tenant to decide if he or she wants to accept a concession offer. It insists that if plaintiff is successful, then landlords will be disincentivized from offering concessions and there will be delays in renting to a tenant. Plaintiff, unsurprisingly, vehemently disagrees with this characterization and emphasizes that defendant's benefit is the significant reduction in taxes.

The Court finds that these public policy arguments do not compel the Court to deny the motion. It is not this Court's role on a motion for summary judgment to opine that a public policy argument is sufficient to wholly ignore the facts presented on this motion, particularly where plaintiff offers a logical rejoinder to defendant's position. In other words, while the Court recognizes that there is certainly a public interest in securing housing for tenants as quickly as possible, it is not evident as a matter of law that such a goal forecloses any analysis of defendant's actions here.

**Fact Sheet 40 and *Burrows***

Defendant cites to the DHCR guidance for the proposition that the concessions here cannot be considered as preferential rents. Fact Sheet 40 provided, in relevant part, that:

> "There are two types of rent concessions. One is a concession for specific months, as for example, where the lease provides that the tenant will not have to pay rent for one or more specified months during the lease term. This type of concession is not considered a preferential rent. The other type is a prorated concession, where the dollar value of the rent free month(s) is prorated over the entire term of the lease and not tied to a specific month or months. A prorated concession is really the same

as a preferential rent and will be treated in the same manner" (NYSCEF Doc. No. 190 at 3).

Defendant's claim that it was providing a concession for a specific month does not end the Court's inquiry (*Chernett v Spruce 1209, LLC*, 200 AD3d 596, 598 [1st Dept 2021]). Plaintiff alleges, as contemplated in *Chernett*, irregularities in their leases that suggest that the concessions were not actually concessions, but part of a scheme to improperly register higher rents.

Defendant also cites a recent Court of Appeals case, *Burrows v 75-25 153rd St., LLC*, (2025 NY Slip Op 01669 [2025]) for the proposition that the instant motion should be denied. However, in this Court's view, the *Burrows* decision is largely inapposite to the situation here. In *Burrows*, the Court of Appeals' central holding was that there was no reliance requirement for purposes of alleging a fraud claim in the overcharge context. "Given the narrow purpose and scope of the fraud exception, there is no basis for imposing the pleading requirements of a common law fraud claim. Instead, we require plaintiffs to put forth "sufficient indicia of fraud" or a "colorable claim" of a fraudulent scheme but do not impose a burden to establish each element of a common law fraud claim" (*id*. at *3).

To be sure, the Court of Appeals affirmed the Appellate Division, First Department's dismissal of an overcharge claim based on a two-month rent concession on the ground that such a claim was legally insufficient (*id*. at *4). However, a review of the First Department's ruling reveals that in *Burrows*, the plaintiff did not allege that there was a "false justification for the concessions" and the appellate court distinguished *Burrows* from a separate matter where such a contention was alleged (*Burrows v 75-25 153rd St., LLC*, 215 AD3d 105, 116 n 9 [1st Dept 2023]). In this case, the plaintiff alleges that there was a false justification for the construction concession. That renders reliance on *Burrows* as inapplicable.

**Summary**

This Court's decision to deny the instant motion rests primarily on the fact that plaintiff simply did not meet his burden to show that the construction concessions were bogus. Plaintiff submitted documents that raise questions about the veracity of the construction concessions. But these documents do not demonstrate the absence of any material issues of fact. Specifically, plaintiff did not describe the condition of the building at the time these construction concessions were offered. He did not show, from someone with personal knowledge of the building at that time, that all construction was complete and that the tenants did not suffer the inconveniences contemplated by the construction concession.

Plaintiff is correct that in class actions, affidavits need not be submitted from every class member or even from a majority of class members. But here, plaintiff did not submit anything from a single class member. Without a firsthand account, the Court cannot conclude as a matter of law that defendant engaged in a complex scheme to unlawfully inflate the initial rents. On a motion for summary judgment, the Court cannot base its entire conclusion on plaintiff's preferred view and interpretation of various documents—documents which do not unambiguously show that all construction was completed.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment is denied.

| | | | |
|---|---|---|---|
| **4/3/2025** | | | |
| **DATE** | | **ARLENE P. BLUTH, J.S.C.** | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |