Order, Supreme Court, New York County (Cynthia S. Kern, J.), entered May 6, 2013, which, inter alia, granted defendant’s motion to dismiss the complaint, unanimously affirmed, with costs.
Defendant is a church housed at 14 East 48th Street in Manhattan (the property). Plaintiff is a real estate investment and development firm. Plaintiff approached defendant about buying the property, and, by letter dated September 14, 2012, from plaintiff to Wade Adkisson, defendant’s pastor (the September 14 letter), plaintiff purported to “set[ ] forth the updated indicative terms and conditions pursuant to which [plaintiff] or its designated affiliate . . . agrees to acquire the Property.” Under the heading “Acquisition Terms,” the September 14 letter then summarized the terms of sale as follows:
“Acquisition Price: $15,000,000
“Seller: First Church of Religious Science
“Terms: Cash to Seller, conveyance of marketable title to Property at closing
*442 “Deposit: An initial, fully refundable deposit of $500,000 (the ‘Deposit’) shall be paid to an escrow agent upon execution by the parties of a reasonably acceptable escrow agreement.
“Due Diligence Period: The Deposit shall become non-refundable following a 30 day due diligence period. This due diligence shall be satisfactory in all respects to the Buyer in its sole and absolute discretion, and upon mutual execution and delivery of Acquisition documentation satisfactory to Buyer in its sole and absolute discretion.
“Delivery of Title: At closing, Seller shall convey to [plaintiff] fee simple marketable title to the Property. The Property shall be conveyed vacant and free and clear of all violations, liens and encumbrances.
“Closing Date: A date mutually acceptable to the parties, allowing a reasonable period of time for Seller to deliver the Property to Purchaser vacant. [Plaintiff] wishes to accommodate the Seller’s intentions to use the proceeds from the sale of the Property towards the acquisition of a different location for the Seller.”
Reverend Adkisson signed the September 14 letter, under the words “Agreed and accepted on this 14th day of September, 2012.” On October 24, 2012, counsel for plaintiff sent an email to counsel for defendant attaching a draft contract of sale which was, according to the email, “based upon the Letter of Intent.” Plaintiffs counsel also forwarded a proposed escrow agreement. In the weeks that followed, plaintiff’s counsel sent various emails to defendant’s counsel expressing plaintiff’s desire to formalize the arrangement. These emails discussed “finaliz[ing] the terms” of the transaction and the fact that “there ha[d] been whatever preliminary conversations there need to be.”
According to plaintiff, before a contract of sale could be executed, defendant informed it that it was engaged in negotiations to sell the property to another buyer, and that it would only sell the property to plaintiff if it paid $17,500,000, renegotiated the due diligence term of the agreement, and increased the down payment to $1,750,000. Plaintiff then commenced this action for breach of contract and specific performance, and filed a notice of pendency against the property. Defendant moved to dismiss the complaint, arguing that the September 14 letter did not constitute an enforceable contract for the sale of real property. It asserted that the language of the September 14 letter, as well as the negotiations which followed it, demonstrated that it was a mere summary of plaintiffs offer, and not a final agreement with all of the material and essential terms necessary to satisfy the statute of frauds. It also claimed the September 14 *443 letter was not enforceable because it did not provide for approval by the court and the Attorney General, as required for religious institutions pursuant to the Not-For-Profit Corporation Law.
Plaintiff argued in opposition that the complaint properly alleged the existence of a binding agreement between the parties, since all of the essential terms were included in the September 14 letter. It asserted that the parties’ intention to enter into a more formal agreement did not invalidate the already binding September 14 letter, which it claimed contained all necessary material terms. It also argued that the Not-For-Profit Corporation Law did not bar enforcement of the agreement.
Supreme Court granted defendant’s motion to dismiss the complaint and vacated the lis pendens. It found that the September 14 letter was missing several material terms, including (1) the specific terms of the escrow agreement for a contract deposit; (2) the specific closing date; (3) financing terms; (4) the risk of loss during the sale period; (5) the time and terms of payment of the purchase price; (6) a specific description of the subject property; (7) the identity of the parties who signed the term sheet or what relation the signers to the term sheet have to the buyer and seller; and (8) the correct name of the seller as First Church of Religious Science, New York, N.Y. The court placed particular significance on the fact that the September 14 letter left for future negotiation the obligation to make a down payment and when the down payment would actually be made. Additionally, the court found that the subsequent negotiations between the parties indicated that there was no agreement on essential terms.
“[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable” (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981]). Plaintiff asserts that, in the context of agreements to sell real estate, which must satisfy the statute of frauds, the only terms that are material are price, the identities of the buyer and seller, and a description of the property to be sold. Since the September 14 letter contained all of those terms, it contends, it is enforceable regardless of whether the parties contemplated the negotiation of additional terms at a later time. Defendant questions whether the September 14 letter is adequately definite on the identities of the parties and the property’s description and that, in any event, there were additional terms, unique to the transaction, which were required to be embodied in any signed writing to satisfy the statute of frauds.
*444 Defendant is correct that, while price, identity of the parties and the parcel of real estate to be sold are material in a real estate transaction, the list of essential terms is not a defined one. Indeed, those items which must be set forth in a writing are “those terms customarily encountered in” a particular transaction (O’Brien v West, 199 AD2d 369, 370 [2d Dept 1993]). Thus, courts have held that a writing to convey real estate must provide for a closing date, the quality of title to be conveyed, adjustments for taxes and risk of loss (see id.; Nesbitt v Penalver, 40 AD3d 596, 598 [2d Dept 2007]).
We agree with plaintiff that the September 14 letter was sufficiently definite with respect to price, identification of the buyer and seller and a description of the property. The price of $15,000,000 was expressly stated, and defendant has failed to adequately explain why the use in the September 14 letter of the term “First Church of Religious Science” to identify it as the seller was inadequate, when the name is nearly identical to its official name, which is “First Church of Religious Science, New York, NY.” Further, defendant has not demonstrated that the street address for the church does not fully describe the property it owns.
Nevertheless, we agree with defendant that the September 14 letter did not contain all of the material terms which one would reasonably have expected to be included under the circumstances, rendering the September 14 letter unenforceable. For example, while the September 14 letter contemplated that the down payment would be held in escrow, it failed to identify who the escrow agent would be and left to future negotiations “a reasonably acceptable escrow agreement.” Since “[n]o contract for the sale of real property can be created when a material element of the contemplated bargain has been left for further negotiations” (Generas v Hotel des Artistes, 117 AD2d 563, 566 [1st Dept 1986], lv denied 68 NY2d 606 [1986]), and the details of an escrow arrangement are certainly material, this alone warranted the motion court’s conclusion that the letter was not a contract.
Further, the contemplated transaction was unique, insofar as it was contingent on approval by the court and the Attorney General. While we do not question that defendant was entitled to agree to a sale of the property prior to seeking such approval (see Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn, 76 AD2d 712, 716 [2d Dept 1980], affd 54 NY2d 742 [1981]), one would expect that an agreement would have contained such material terms as defendant’s duty to seek approval in a diligent manner, and the consequences of a failure *445 to secure such approval. Indeed, it has been held that the contingency created by a condominium association’s right of first refusal is material to an agreement to sell an individual condominium apartment (see Simmonds v Marshall, 292 AD2d 592, 593 [2d Dept 2002]).
Plaintiff argues that it is of no moment that the September 14 letter omitted terms such as the closing date and allocation of risk of loss, since those can be supplied by common-law precepts in the absence of specific contractual agreement. However, the issue is not whether the law can operate to flesh out the agreement, rather, it is whether there was a meeting of the minds in the first place. Thus, there is a direct correlation between the number of terms omitted from a writing and the likelihood that the parties agreed to be bound by it (see O’Brien, 199 AD2d at 371). Here, there are sufficient material terms absent from the September 14 letter such that it does not constitute an enforceable agreement. Further, we find that by merely indicating that he “[a]greed and accepted” the September 14 letter, Reverend Adkisson did not transform an otherwise incomplete agreement to agree into a fully enforceable contract to sell the church property.
Finally, the documentary evidence created after the execution of the September 14 letter establishes that it was not meant to constitute a final agreement. Most significant to us is plaintiffs counsel’s statement, four months after execution of the September 14 letter, that all negotiations until that time had been “preliminary conversations,” and that the principals still needed to “have a face to face to finish up and look to sign whatever is to be signed.” This evidence “flatly contradices]” plaintiffs claim that the September 14 letter was independently enforceable, and permits the pre-answer dismissal of the complaint (Rivietz v Wolohojian, 38 AD3d 301, 301 [1st Dept 2007] [internal quotation marks omitted]).
In light of our finding that the September 14 letter was missing numerous material terms, we reject plaintiff’s contention that, at the very least, it created an obligation on defendant’s part to continue to negotiate in good faith (see Mode Contempo, Inc. v Raymours Furniture Co., Inc., 80 AD3d 464, 465 [1st Dept 2011]). Further, because we have determined that the September 14 letter proposal was not enforceable, we need not reach the issue of whether it expired before plaintiff attempted to enforce it.
Concur—Mazzarelli, J.E, Andrias, DeGrasse, Feinman and Kapnick, JJ.
Motion seeking renewal of denial of reinstatement of notice of *446 pendency denied as academic.