**ZDG, LLC v 174-176 1st Ave. Owner LLC**

2024 NY Slip Op 34290(U)

December 4, 2024

Supreme Court, New York County

Docket Number: Index No. 652020/2022

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. ARLENE P. BLUTH**                    PART                    14

*Justice*

--------------------------------------------------------------------------------X

ZDG, LLC,

                                        Plaintiff,

                    - v -

174-176 1ST AVENUE OWNER LLC,MQ CONSULTING, LLC,PINNACLE BUILDING MAINTENANCE INC.,STERLING NATIONAL BANK

                                        Defendant.

--------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 652020/2022 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Defendant 174-176 1st Avenue Owner LLC's motion for summary judgment and

plaintiff's cross-motion for summary judgment are both denied.

**Background**

Plaintiff ZDG, LLC ("ZDG") is a construction management firm which brought this case

against defendant 174-176 1st Avenue Owner LLC ("174") claiming it was not paid in full for

work it performed.

In early 2021, 174's agent, Highpoint Property Group, approached ZDG and requested

pricing for the construction of a dining establishment. On January 20, 2021, ZDG provided 174

with a document labeled "Cost Summary" showing a total cost summary of $175,000 (NYSCEF

Doc. No. 71). 174 refers to this document as a "bid" whereas ZDG calls it "an initial budget

intended to serve as a goalpost."

[* 1]

The parties have alleged that throughout February 2021, four different contracts were exchanged between the parties. 174 sent ZDG two different contracts listing a fixed price of $175,000 in early February of 2021 (NYSCEF Doc. Nos. 72, 73).[1] 174 claims that ZDG accepted the second contract and started work. 174 sent a letter of intent dated February 8, 2021 with a contract price of "approximately $175,000" with the condition that the failure to execute a subcontract would render the letter null and void (NYSCEF Doc. No. 107).

The record shows that 174 sent ZDG a third contract with a cost-plus payment structure on February 17, 2021; it listed a fixed sum of $11,000 as the construction manager's fee and did not list a fixed base contract price (NYSCEF Doc. No. 96). ZDG claims it accepted the cost-plus structure but did not sign the contract. Despite apparently sending the cost-plus contract, 174 now states that it never agreed to a cost-plus structure, while admitting that it agreed to a revised contract price of $243,645 around this time.

On February 26, 2021, ZDG sent 174 a proposed master agreement regarding the subject project and two other projects between ZDG and 174's agent Highpoint Property Group; the agreement contemplated ZDG being paid for the cost of work, anticipated separate contracts for each of the three projects, and estimated the cost of the subject project to be "about $200k" (NYSCEF Doc. No. 75). None of the above listed agreements were fully executed.

ZDG's first request for payment for work completed through April 30, 2021 demanded $105,145.20 and lists the contract sum as $197,000 (NYSCEF Doc. No. 108). ZDG added a fee on top of the costs it incurred, consistent with billing on a cost-plus basis. 174 sent an email to ZDG on May 26, 2021 which objects to the $197,000 contract sum, admits the increase in costs

---

[1] It is not clear to the Court whether there are any differences between NYSCEF Doc. No. 72 and NYSCEF Doc. No 73. The documents seem to be identical, are both dated February 1, 2021, and no party has pointed to any differences between them.

make sense for "demo and concrete" as well as for "plumbing and sprinkler," and questions why the cost for drywall and counters increased 30% and 60% respectively (NYSCEF Doc. No. 109). Despite any objections it may have had, on June 11, 2021, 174 paid ZDG *the full amount requested in the first requisition,* $105,145.20.

On June 11, 2021, ZDG, which claims it was working on a cost-plus basis since February 2021, submitted a lien waiver that shows a contract date of May 2, 2021 with a contract amount of $175,000 (NYSCEF Doc. No. 76).

On June 22, 2021, ZDG claims it sent 174 a second request for payment for $92,389.23 (NYSCEF Doc. No. 97). 174 admits it received the second requisition on "July 20, 2024 [sic]."[2] ZDG claims it sent a third requisition on August 12, 2021 for $93,265.00 (NYSCEF Doc. No. 98). 174 admits it received the third requisition on "August 19, 2024 [sic]."[3] The third requisition shows the original "contract sum" as $197,000 with $163,005.29 of "net change by change orders" bringing the total anticipated contract sum to $360,005.29 (*id.*).

174 states that it objected upon receiving the third requisition. The email reproduced at NYSCEF Doc. No. 110 shows that 174 emailed ZDG on August 19, 2021 writing, "We had a deal at $175k. Somehow that's changed to $197k…Even if you hit me for extra demo on the floor, this is still a low-mid 200k job" (NYSCEF Doc. No. 110). The email does not reference that ZDG's third requisition stated the total contract sum at $360,004.29 (*id.*).

Work on the project continued. On August 20, 2021, ZDG responded in an email to 174 explaining why the costs were higher than originally anticipated, namely that the project was originally to build a café, but the plans changed to building a full-service restaurant (NYSCEF Doc. No. 111). ZDG attached a spreadsheet showing an estimated total price of $393,153 (*id.*).

---

[2] The Court assumes 174 meant July 20, 2021.
[3] The Court assumes 174 meant August 19, 2021.

[* 3]

174 responded that same day stating that the plan had always been to build a full-service restaurant while admitting changes were made to the original plan: the inclusion of gas and affiliated ventilation, plumbing, and sprinklers (NYSCEF Doc. No. 112). 174 estimated that the work could be completed for $243,645 (*id.*).

ZDG claims it sent a fourth requisition on September 15, 2021 for $134,783.97, which covered work through July 31, 2021 (NYSCEF Doc. No. 99). On September 16, 2021, ZDG sent a letter demanding payment of $320,438.25, the total of the payments demanded in the second, third and fourth requisitions (NYSCEF Doc. No. 78). 174 responded on September 27, 2021 disputing the amount owed and claiming that it did not have the second, third, or fourth requisitions (NYSCEF Doc. No. 79). At this point, 174 claims that it took over the project and paid subcontractors directly.

174 contends that ZDG's claim for $320,438.25 must be lowered because ZDG improperly assumed an incorrect base contract price, ZDG seeks compensation for work that had no rational connection to the project, and ZDG's work was unsatisfactory and had to be redone.

174 shows that subcontractor Access Plumbing Corp. released its claim for $62,389.67, Artistic Marble & Granite Inc. released its claim for $746.38, and MasterCare Management Corp. released its claim for $39,333.34 (NYSCEF Doc. Nos. 114, 115, 116). 174 paid $3,500 to A&E Surfaces Co., Inc., bought $3,961.87 worth of electrical hardware, and paid $5,983.26 to replace plywood subflooring that ZDG installed (NYSCEF Doc. No. 117, 119, 121). 174 paid Tumen Inc. $54,000 to finish the project (NYSCEF Doc. No. 118). Lastly, 174 alleges that ZDGs claim should be reduced by $630 for work that was not related to the project.

The total sum 174 alleges or has shown it paid to finish the job is $169,914.52. Combined with the $105,145.20 that 174 paid ZDG, 174's total to complete this project is $275,059.72.

[* 4]

ZDG filed a mechanic's lien on the subject property on January 24, 2022. It commenced this action by filing a summons and complaint on April 29, 2022 and filed a notice of pendency on October 22, 2022.

174 brought the present motion and seeks summary judgment dismissing ZDG's complaint and canceling the notice of pendency.

ZDG cross-moves for summary judgment on all five of the causes of action asserted in its complaint: breach of contract, quantum meruit, unjust enrichment, account stated, and for foreclosure on the mechanic's lien.

**Discussion**

To be entitled to summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (*id*.). When deciding a summary judgment motion, the court views the alleged facts in the light most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492, 955 NYS2d 589 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bona fide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably

conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec, Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

## **Defendant's Motion for Summary Judgment Dismissing Plaintiff's Complaint**

The Court denies 174's motion for summary judgment seeking dismissal of ZDG's breach of contract and quasi contract claims in ZDG's complaint; 174 has not shown that it is entitled to judgment as a matter of law. 174 first states that ZDG's contract claim is deficient as ZDG failed to establish which agreement bound the parties. Then 174 asks the Court to dismiss ZDG's quantum meruit and unjust enrichment claims because the rights and obligations of the parties are governed by contract. 174 cannot have it both ways. Because 174 has not shown that it is bound by a particular contract, nor is it clear on this record which written and unsigned agreement (if any) binds the parties, the Court cannot grant summary judgment dismissing ZDG's breach of contract claims. Likewise, since it is clear that 174 allowed ZDG to do work, and ZDG did do work, the Court cannot grant summary judgment dismissing ZDG's quasi-contract causes of action.

## **Defendant's Motion to Cancel the Notice of Pendency**

The Court denies the part of 174's motion seeking to cancel ZDG's notice of pendency.174's argues that despite the fact that ZDG had already served a summons with the complaint before filing the lis pendens and complied with CPLR 6511 (a), ZDG should have also served a second summons within the 30 days following the filing of the notice of pendency pursuant to CPLR 6512.

CPLR 6511 (a) provides that "the notice of pendency shall be filed…before or after service of summons and at any time prior to judgment." CPLR 6512 provides that "[a] notice of

[* 6]

pendency is effective only if, within thirty days after filing, a summons is served upon the defendant." If read literally, CPLR 6512 could appear to require a second summons be served if the notice of pendency was filed after the original summons.

ZDG filed a summons and complaint to commence this action on April 29, 2022 and filed a notice of pendency on October 22, 2022 in compliance with CPLR 6511 (a).

174 has not cited binding precedent holding that a Court must cancel a lis pendens where a party complied with CPLR 6511 (a) and but failed to serve a second summons pursuant to CPLR 6512. To the contrary, the Court notes several cases to support the notion that the party filing the notice of pendency must comply with either CPLR 6511 (a) or CPLR 6512, not both (*see Bunnell v Haghighi*, 183 F Supp 3d 364, 368-69 [ED NY 2016]; *Lopez v Bautista*, 2023 NY Slip Op 34071[U] [Sup Ct, Kings County 2023]; *Smith v Schommer*, CV 17-86 (JMA) (GRB), 2018 WL 11452392, at *6 [ED NY Mar. 6, 2018]).

Indeed, it seems that it was not the intention of the drafters of the CPLR to require an additional service of process when a case was already properly commenced before the lis pendens was filed (David D. Siegel & Patrick M. Connors, New York Practice § 335 [6th ed, Dec. 2022 update]). In fact, the apparent tension between CPLR 6511 (a) and 6512 is "…another drafting misfortune that afflicts the well-intentioned minions who have struggled to bring sense to the helter-skelter legislative program known as the filing system. If the action has already been commenced with both a filing and a service, the statute should not be read to require the service of an additional summons, measured now from the filing of the lis pendens" (22 Siegel's Practice Review 3, *Filing Notice of Pendency in Real Property Action* [Aug. 1994]).

Clearly, the purpose of a lis pendens is to provide notice that there is a lawsuit that might affect the property. Because there has to be a lawsuit, filing the summons commences the

lawsuit. CPLR 6511 (a) allows the lis pendens to be filed after you start the case (by filing the summons). CPLR 6512 should be read to mean that if you filed the lis pendens before you started the case, then you have to start the case by filing the summons within 30 days.

Because ZDG was in compliance with CPLR 6511 (a) when it filed its notice of pendency (the case had already started), the Court declines to cancel the notice of pendency.

**Plaintiff's Cross-Motion For Summary Judgment on its Breach of Contract Claim**

To determine if a contract was formed, "…the issue is not whether the law can operate to flesh out the agreement, rather, it is whether there was a meeting of the minds in the first place" (*Argent Acquisitions, LLC v First Church of Religious Science*, 118 AD3d 441, 445 [1st Dept 2014]). In this case there are issues of fact surrounding whether there was a meeting of the minds sufficient to form a binding contract. The parties exchanged multiple dueling contracts with different material terms, and each party claims that a different contract governs. The contracts are substantially different, and none of them were fully executed.

Although 174 alleges the parties had a deal at $175,000, that record shows that 174 also admitted some changes were needed, offered ZDG $243,645, and apparently sent ZDG a contract with a cost-plus payment structure. 174 paid ZDG $105,145.20, the amount ZDG requested on an invoice where the contract price was listed as $197,000 and where the billing appeared to be consistent with a cost-plus payment structure.

ZDG contends that the $175,000 was nothing more than a goal post, and that the parties intended for the price to be flexible and to earn fees on a cost-plus basis. However, ZDG did not sign the cost-plus contract that it received from 174 and submitted a lien waiver with the contract price listed as $175,000 on June 11, 2021. ZDG also continued to work on the project despite 174 openly disputing the increased costs.

[* 8]

There seems to be further disagreement regarding the scope of construction – whether the plan was to build a café or a full-service restaurant. Since there was no clear meeting of the minds about at least two material terms - price and scope of work - the Court denies the part of ZDG's cross-motion that asks for summary judgment for breach of contract. The Court cannot find that a contract was formed based on these papers. And because the record shows that 174 objected to the bills, ZDG cannot get summary judgment on account stated.

**Quasi-Contract Claims**

The Court further denies the part of ZDG's cross-motion seeking summary judgment on its claims of quantum meruit and unjust enrichment.

The elements of quantum meruit are "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" (*Soumayah v Minnelli*, 41 AD3d 390, 391 [1st Dept 2007] [citations omitted]). The elements of unjust enrichment are "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (*Metro. Bank & Trust Co. v Lopez*, 189 AD3d 443, 444-445 [1st Dept 2020] [internal quotations and citations omitted]).

As highlighted throughout this opinion, there are multiple questions of fact. ZDG continued working on the project despite 174 saying it disagreed with the price, and 174 has shown or alleged that it paid $169,914.52 to finish the project on top of the $105,145.20 it initially paid to ZDG. 174 also alleges that some of the work performed by ZDG was substandard or unrelated to the project. There are still questions over whether the services were

performed in good faith, that the services were accepted, and the reasonable value of the services performed.

The Court likewise cannot grant the part of ZDG's cross-motion seeking summary judgment for unjust enrichment. 174 contends that a large amount of what it was billed by ZDG was in fact owed to subcontractors, not to ZDG, and 174 paid the subcontractors directly. 174's total to complete this project was $275,059.72, and it claims that it had a deal at $175,000. 174 has raised issues of material fact regarding whether it was unjustly enriched and that the enrichment was at the expense of ZDG.

For the above reasons, the Court cannot grant summary judgment to ZDG on its quasi-contract claims.

**Plaintiff's Cross-Motion for Summary Judgment for Mechanic's Lien Foreclosure**

ZDG cross-moves for summary judgment to foreclose on the mechanic's lien. At this point, because it has not been determined how much, if anything, is due, the Court denies this part of ZDG's cross-motion.

**Summary**

The parties don't agree on which, if any, written draft of the several unsigned contracts govern. They don't agree on the scope of the initial work. They don't agree on the quality of the work. The only thing they agree on is that ZDG had permission to, and did, do some work on the premises and that it got paid $105,145.20. The Court cannot grant summary judgment on the breach of contract claim because there is no clear agreement. The quantum meruit and unjust enrichment claims are not for summary judgment because 174 paid the subcontractors and another contractor to finish the job; it is entirely unclear whether the payment to ZDG more than

[* 10]

covers the value of the work ZDG did. For the same reasons, the mechanic's lien is not subject to summary judgment.

The trier of fact must determine whether there was a contract and, if so, what were the terms. If there was no contract, then the trier of fact must determine the value, if any, of ZDG's services. And after determining the amount to which ZDG might be entitled, the trier of fact must compare it to the money ZDG already received and the costs 174 incurred in paying the subcontractors and finishing the job. Only after making those determinations and doing those calculations can it be decided how much 174 must pay ZDG or how much ZDG must pay 174.

Accordingly, it is hereby

ORDERED that 174's motion for summary judgment is denied in its entirety; and it is further

ORDERED that ZDG's cross-motion seeking summary judgment is denied in its entirety.

| 12/4/2024 | | | |
|---|---|---|---|
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | x DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |